| Attorney or Party Name, Address, Telephone & FAX Nos., State Bar No. & Email Address | FOR COURT USE ONLY |
|---|---|
| TANG & ASSOCIATES<br>Kevin Tang, Esq. (SBN: 291051)<br>601 S. Figueroa St., Ste. 4050<br>Los Angeles, California 90017<br>Tel.: (213)300-4525; Fax: (213)403-5545<br><br>☒ *Attorney for Movant*<br>☐ *Movant appearing without attorney* | |

**UNITED STATES BANKRUPTCY COURT**
**CENTRAL DISTRICT OF CALIFORNIA - SANTA ANA DIVISION**

| In re: | CASE NO.:  8:18-bk-10013-MW |
|---|---|
| | CHAPTER: 11 |
| Fred Asafu-Adjaye and Esther Asafu-Adjaye, | **NOTICE OF MOTION AND**<br>**MOTION FOR ORDER DETERMINING**<br>**VALUE OF COLLATERAL**<br>**[11 U.S.C. § 506(a), FRBP 3012]** |
| | This motion is being made under **ONLY ONE** of the following notice procedures:<br>☐ **No hearing unless requested under LBR 9013-1(o)(4);**<br>☐ **Hearing set by Movant: LBR 9013-1(d);**<br>☐ **Hearing on Shortened Notice: LBR 9075-1(b); or**<br>☐ **Hearing on Emergency Basis: LBR 9075-1(a).**<br><br>DATE: 01/29/2018<br>TIME:  2:00 pm<br>COURTROOM: 6C<br>PLACE: 411 W Fourth St., Santa Ana, CA 92701 |
| Debtor(s) | |

**Creditor Name** *(Insert name of creditor holding collateral to be valued):* Wells Fargo Bank

1. **PLEASE TAKE NOTICE THAT** Fred Asafu-Adjaye and Esther Asafu-Adjaye (Movant) requests an order valuing the collateral described below.  This motion does not request lien avoidance (see LBR forms F 4003 for lien avoidance involving principal residences and judicial liens).

This form is optional.  It has been approved for use by the United States Bankruptcy Court for the Central District of California

*June 2013*                    Page 1                    **F 3012-1.MOTION.VALUATION**

2. **NOTICE PROVISIONS AND DEADLINES FOR FILING AND SERVING A WRITTEN RESPONSE:** Your rights might be affected by this Motion. You may want to consult an attorney.  Refer to the box checked below for the deadline to file and serve a written response. If you fail to timely file and serve a written response, the court may treat such failure as a waiver of your right to oppose the Motion and may grant the requested relief.  You must serve a copy of your opposition upon the Movant and the Movant's attorney and the United States trustee, and also serve a copy on the judge pursuant to LBR 5005-2(d) and the Court Manual.

a. ☐    **No Hearing Scheduled; Notice Provided Under LBR 9013-1(o):** This Motion is filed by the Movant pursuant to LBR 9013-1(o), which provides for granting of motions without a hearing.  The full Motion is attached, including the legal and factual grounds upon which the Motion is made.  If you wish to oppose this Motion, you must file a written response and request for hearing with the court and serve it as stated above **no later than 14 days after the date stated on the Proof of Service of this Motion** plus 3 additional days if you were served by mail, electronically, or pursuant to F.R.Civ.P. 5(b)(2)(D), (E), or (F). Your opposition must comply with LBR 9013-1(f) and (o).

b. ☒    **Hearing Set by Movant; Notice Provided Under LBR 9013-1(d):** This Motion is set for hearing on at least 21 days of notice pursuant to LBR 9013-1(d).  The full Motion and supporting documentation are attached, including the legal and factual grounds upon which the Motion is made.  If you wish to oppose this Motion, you must file a written response with the court and serve it as stated above **no later than 14 days prior to the hearing**.  Your response must comply with LBR 9013-1(f).  The undersigned hereby verifies that the hearing date and time selected were available for this type of Motion according to the judge's self-calendaring procedures [LBR 9013-1(b)].

c. ☐    **Hearing Requested on Shortened Notice under LBR 9075-1(b):** Movant has filed a separate motion asking the court to set a hearing on shortened notice, titled Application for Order Setting Hearing on Shortened Notice (Application).  If the court grants the Application, the Movant will serve you with another document providing notice. The deadline to file and serve a written response will be contained in this document.  If the court denies the Application, the Movant will provide written notice of a regular hearing date or other proposed disposition of this motion.

d. ☐    **Hearing Requested on Emergency Basis under LBR 9075-1(a):  Hearing Requested on Emergency Basis under LBR 9075-1(a):**  Movant has contacted the court and requested an emergency hearing on less than 48 hours notice.  If the court grants the request, you will receive a separate Notice of Hearing that identifies the deadline for the Movant to file and serve the Motion and the deadline for you to file and serve a written response.  If the court denies the request to set an emergency hearing, the Movant will provide written notice of a regular hearing date or other disposition of this motion and the deadline for filing an opposition.

Date:  01/08/2018

By:    /s/ Kevin Tang
       *Signature of Movant or Attorney for Movant*

Name:  Kevin Tang
       *Print Name of Movant or Attorney for Movant*

This form is optional.  It has been approved for use by the United States Bankruptcy Court for the Central District of California

## MOTION FOR ORDER DETERMINING VALUE OF COLLATERAL
## PURSUANT TO 11 U.S.C. § 506(a) AND FRBP 3012

**1. The Movant is (*check one*):**
- ☐ The debtor
- ☐ A creditor
- ☐ The trustee
- ☐ The Official Committee of Creditors Holding Unsecured Claims
- ☐ Other (*specify*): _____

**2. The Collateral to be Valued:**

    a. The Movant requests a determination of the value of the following collateral (Collateral).

    ☒ Real Property
    *Street Address:*     28841 Yosemite Place
    *Unit Number:*
    *City, State, Zip Code:*    Canyon Lake, CA 92587

    Legal description or document recording number (including county of recording):
    Lot: 87  Tract No: 3718  Abbreviated Description: LOT:87 CITY:CANYON LAKE TR#:3718
    LOT 87 MB 059/019 TR 3718 City/Muni/Twp: CANYON LAKE

    ☐ Personal Property

       ☐ Vehicle:
       *Year, manufacturer, type, and model:* _____
       *Vehicle Identification Number:* _____
       *Location of vehicle (if known):* _____

       ☐ Equipment:
       *Manufacturer, type, and characteristics:* _____
       *Serial number(s):* _____
       *Location (if known):* _____

       ☐ Other Personal Property (*describe type, identifying information, and location*):
       _____
       _____

    ☐ See attached page.

    b.   Purpose of the Valuation

       ☒ Treatment of the claim in a plan:

          ☐ Pursuant to 11 U.S.C. § 1322

          ☒ Pursuant to 11 U.S.C. § 1129

          ☐ Other: _____

       ☐ Disposition or use of Collateral pursuant to 11 U.S.C. § 363;

       ☐ Other: (*specify*): _____
                        _____

This form is optional.  It has been approved for use by the United States Bankruptcy Court for the Central District of California

*June 2013*                 Page 3                 **F 3012-1.MOTION.VALUATION**

c. Movant asserts that the value of the Collateral is $ <u>675,000.00</u>                as of (date): <u>01/03/2018</u>

*Check one*:

☒ Date bankruptcy case was commenced.

☐ Other (*specify*):_____

**3. Liens Encumbering the Collateral:**

The Collateral is subject to the following liens in the amounts specified securing the debt against the Collateral:

| Names of Lien Holders in Order of Priority | Original Lien Amount | Balance of Lien Amount As of *(applicable date)* |
|---|---|---|
| 1ˢᵗ **Lien:** Wells Fargo Bank | $ 862,500.00 | $ 835,000.00 |
| 2ⁿᵈ **Lien:** | $ | $ |
| 3ʳᵈ **Lien:** | $ | $ |

☐ See attached page for additional lien(s).

**4. Determination of Secured/Unsecured Status:**
Based upon paragraphs 2 and 3 above, Movant asserts the following:

| Names of Lien Holders in Order of Priority | Secured Portion of the Claim | Unsecured Portion of the Claim |
|---|---|---|
| 1ˢᵗ **Lien:** Wells Fargo Bank | $ 6,750,000.00 | $ 160,000.00 |
| 2ⁿᵈ **Lien:** . | $ | $ |
| 3ʳᵈ **Lien:** | $ | $ |

☐ See attached page for additional lien(s).

**5. Evidence in Support of Motion:**

a. Evidence establishing the value of the Collateral:
☒ Declaration of the debtor as owner of the Collateral
☒ Declaration of the expert witness
   ☒ Certified appraiser
   ☐ Other: _____
☐ Declaration of a party who can authenticate a market report (e.g. Kelley Blue Book) pursuant to
   F.R.Evid. 803(17).
☒ Other: Appraisal Report (Exhibit A)

b. Evidence establishing the amount of the claims related to the liens encumbering the Collateral
☒ Declaration of the debtor as owner of the Collateral
☐ Declaration of a witness authenticating a document that is an admissible statement of a party
   opponent (e.g. proof of claim or a recent loan statement) pursuant to F.R.Evid. 801(d)(2).
☒ Other: Mortgage Statement (Exhibit B)

c. Evidence establishing the priority of the lien encumbering the Collateral
☐ Declaration of the debtor as owner of the Collateral
☒ Other: Recorded Deed of Trust (Exhibit C)

d. ☐ Other evidence (*specify*):

This form is optional.  It has been approved for use by the United States Bankruptcy Court for the Central District of California

*June 2013*                                    Page 4                                    **F 3012-1.MOTION.VALUATION**

**Based upon the foregoing, Movant requests that this Court value the Collateral as listed in paragraph 2.c. above and that the claims related to the liens encumbering the Collateral, listed in paragraph 3 above, are determined to be secured or unsecured as requested in paragraph 4 above.**

☐ See attached continuation page for additional provisions.

Respectfully submitted,

Date:  01/08/2018

By:  /s/ Kevin Tang
*Signature of Movant or Attorney for Movant*

Name:  Kevin Tang, Esq.
*Printed Name of Movant or Attorney for Movant*

---

This form is optional.  It has been approved for use by the United States Bankruptcy Court for the Central District of California

*June 2013*                                     Page 5                          **F 3012-1.MOTION.VALUATION**

## DECLARATION OF THE DEBTOR AS OWNER OF THE COLLATERAL IN SUPPORT OF MOTION FOR ORDER DETERMINING VALUE OF COLLATERAL

1. I, *(state debtor's name)* Esther Asafu-Adjaye_____ declare that I am the debtor in this bankruptcy case.

2. I make this declaration of my own personal knowledge and if called as a witness, could and would testify thereto.

3. I am the owner of the collateral listed in paragraph 1 of the Motion for Order Determining Value of Collateral to which this declaration is attached.

4. My opinion of the value of the Collateral is $ 675,000.00_____ as of *(applicable date)* 01/03/2018_____ based upon my personal knowledge, including but not limited to:

   ☒ Review of an appraisal (do not attach).

   ☒ Knowledge of comparable sales (do not attach).

   ☐ Other: _____

5. As of *(applicable date)* _____, the Collateral is subject to the following liens in the amounts specified securing the debt against the Collateral:

| Names of Lien Holders in Order of Priority | Original Lien Amount | Balance of Lien Amount As of *(state applicable date)* |
|---|---|---|
| 1st Lien: Wells Fargo Bank | $ 862,500.00 | $ 835,000.00 |
| 2nd Lien: | $ | $ |
| 3rd Lien: | $ | $ |

The foregoing balances are established by true and correct copies of filed proofs of claim, or recent loan statements, or other documents attached to this declaration as Exhibit A.

6. The purpose of the valuation is to provide for treatment of the claim of:

| Names of Lien Holders in Order of Priority | Secured Portion of the Claim | Unsecured Portion of the Claim |
|---|---|---|
| 1st Lien: Wells Fargo Bank | $ 675,000.00 | $ 160,000.00 |
| 2nd Lien: | $ | $ |
| 3rd Lien: | $ | $ |

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

_____
*Signature*

Esther Asafu-Adjaye_____
*Printed Name*

This form is optional. It has been approved for use by the United States Bankruptcy Court for the Central District of California

*June 2013*                    Page 6                    **F 3012-1.MOTION.VALUATION**

## DECLARATION OF EXPERT WITNESS IN SUPPORT OF
## MOTION FOR ORDER DETERMINING VALUE OF COLLATERAL

I, Hector M. Perez                                             declare:

1. I am over 18 years of age, and I am qualified to testify as an expert witness in my capacity as a:

   ☒ Licensed Residential Property Appraiser with license no. AR007743                                        .

   ☐ Other: _____

   _____

2. Attached as Exhibit A to this declaration, is my report, which discloses all the data that I have used in forming my opinion.

3. My opinion of the value of the Collateral is $ 675,000.00               as of *(applicable date)* 01/04/2018          .

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

_____
*Signature*

Hector M. Perez
*Printed Name*

This form is optional.  It has been approved for use by the United States Bankruptcy Court for the Central District of California

*June 2013*                          Page 7                          **F 3012-1.MOTION.VALUATION**

# EXHIBIT A

PEREZ & ASSOCIATES
12501 PHILADELPHIA STREET
WHITTIER, CA 90601
626-926-4838

1/04/2018

FRED ADJAYE
28841 YOSEMITE PL
CANYON LAKE, CA 92587

RE:     ASAFU
        28841 YOSEMITE PL
        CANYON LAKE, CA 92587-7809
File No.   0154-17
Case No.

Dear  MADAME OR SIRS

In accordance with your request, I have personally inspected and prepared an appraisal report of the real
property located at:

                    28841 YOSEMITE PL, CANYON LAKE, CA 92587-7809

The purpose of this appraisal is to estimate the market value of the property described in the body of this
appraisal report.

Enclosed, please find the appraisal report which describes certain data gathered during our investigation
of the property.  The methods of approach and reasoning in the valuation of the various physical and
economic factors of the subject property are contained in this report.

An inspection of the property and a study of pertinent factors, including valuation trends and an analysis of
neighborhood data, led the appraiser to the conclusion that the market value, as of  01/012018
is:
                                $        675,000

The opinion of value expressed in this report is contingent upon the limiting conditions attached to this
report.

It has been a pleasure to assist  you.  If I may be of further service to you in the future, please let me know.

Respectfully submitted,

Signature: _____

HECTOR M. PEREZ
PEREZ & ASSOCIATES

# EXHIBIT A

## APPRAISAL REPORT

## OF



28841 YOSEMITE PL
CANYON LAKE, CA 92587-7809

## PREPARED FOR

FRED ADJAYE
28841 YOSEMITE PL
CANYON LAKE, CA 92587

## AS OF

01/012018

## PREPARED BY

PEREZ & ASSOCIATES
12501 PHILADELPHIA STREET
WHITTIER, CA 90601

**EXHIBIT A**

EXPERT ASSOCIATES            File No.   0154-17

## Table of Contents

| Page Title | Page # |
|---|---|
| URAR Page 1 | 1 |
| URAR Page 2 | 2 |
| URAR Page 3 | 3 |
| Extra Comps 4-5-6 | 4 |
| URAR Page 4 | 5 |
| URAR Page 5 | 6 |
| URAR Page 6 | 7 |
| Photo Subject | 8 |
| Photos (12) | 9 |
| Photos (12) | 10 |
| Photo Comparables 1-2-3 | 11 |
| Photo Comparables 4-5-6 | 12 |
| Plat Map | 13 |
| Location Map | 14 |
| LICENSE | 15 |
| E & O INSURANCE | 16 |
| COST TO REPAIR ESTIMATE | 17 |
| Flood Map | 18 |

FRED ADJAYE ASSOCIATES

File No.    0154-17

# EXHIBIT A
## Uniform Residential Appraisal Report

The purpose of this appraisal report is to provide the lender/client with an accurate, and adequately supported, opinion of the market value of the subject property.

**SUBJECT**

| | | | | | |
|---|---|---|---|---|---|
| Property Address 28841 YOSEMITE PL | | City CANYON LAKE | State CA | Zip Code 92587-7809 | |
| Borrower ASAFU | Owner of Public Record ASAFU | | County RIVERSIDE | | |

Legal Description LOT 87 TRACT 3718

| | | | |
|---|---|---|---|
| Assessor's Parcel # 353-171-017 | Tax Year 2017 | R.E. Taxes $ 6,913.00 | |
| Neighborhood Name CANYON LAKE DEVELOPMENT | Map Reference 676-J7 | Census Tract 0427.17 | |
| Occupant [X] Owner [ ] Tenant [ ] Vacant Special Assessments $ 0 | [X] PUD | HOA $ 247 [ ] per year [X] per month |
| Property Rights Appraised [X] Fee Simple [ ] Leasehold [ ] Other (describe) | | | |

Assignment Type [ ] Purchase Transaction [ ] Refinance Transaction [X] Other (describe) ESTIMATE OF MARKET VALUE

Lender/Client FRED ADJAYE    Address 28841 YOSEMITE PL. CANYON LAKE, CA 92587

Is the subject property currently offered for sale or has it been offered for sale in the twelve months prior to the effective date of this appraisal? [ ] Yes [X] No
Report data source(s) used, offering price(s), and date(s). THIS REPORT IS AN ESTIMATE OF MARKET VALUE AND MAY NOT BE USED FOR ANOTHER USE OTHER THAN INTENDED. RESTRICTED APPRAISAL REPORT FOR THIS SPECIFIC TIME AND DATE & USE.

I [ ] did [ ] did not analyze the contract for sale for the subject purchase transaction. Explain the results of the analysis of the contract for sale or why the analysis was not performed. THIS IS AN ESTIMATE OF MARKET VALUE

**CONTRACT**

Contract Price $ EST    Date of Contract N/A    Is the property seller the owner of public record? [ ] Yes [ ] No Data Source(s) TITLE
Is there any financial assistance (loan charges, sale concessions, gift or downpayment assistance, etc.) to be paid by any party on behalf of the borrower? [ ] Yes [ ] No
If Yes, report the total dollar amount and describe the items to be paid.

**NEIGHBORHOOD**

Note: Race and the racial composition of the neighborhood are not appraisal factors.

| Location | [ ] Urban [X] Suburban [ ] Rural | Property Values | [ ] Increasing [X] Stable [ ] Declining | PRICE | AGE | One-Unit 90 % |
|---|---|---|---|---|---|---|
| Built-Up | [X] Over 75% [ ] 25-75% [ ] Under 25% | Demand/Supply | [ ] Shortage [X] In Balance [ ] Over Supply | $ (000) | (yrs) | 2-4 Unit % |
| Growth | [ ] Rapid [X] Stable [ ] Slow | Marketing Time | [ ] Under 3 mths [X] 3-6 mths [ ] Over 6 mths | 500 Low 5 | Multi-Family % |
| | | | | 1,400 High 100 | Commercial 10 % |
| | | | | 675 Pred. 50 | Other VACNT 10 % |

Neighborhood Boundaries NOTHING UNFAVORABLE NOTED: THE GENERAL NEIGHBORHOOD BOUNDARIES: HWY 74 TO THE NORTH, GOETZ RD TO THE EAST, RAILROAD CANYON RD TO THE SOUTH, 15 FWY TO THE WEST.

Neighborhood Description THE NEIGHBORHOOD PRIMARILY CONSISTS OF SFR'S AND MULTI-FAMILY RESIDENCES OF SIMILAR AGE AND DESIGN. STRUCTURES ARE OF AVERAGE QUALITY, AVERAGE TO GOOD CONDITION AND THEY EXHIBIT AVERAGE MAINTENANCE. THE SUBJECT HAS GOOD ACCESS TO ALL LOCAL SUPPORT FACILITIES INCLUDING PARKS, SCHOOLS, SHOPPING, EMPLOYMENT AND FREEWAYS. NO UNFAVORABLE MARKETABILITY NOTED. SUBJECT IS LOCATED APPROX 78 MILE SEAST OF DOWNTOWN LOS ANGELES.

Market Conditions (including support for the above conclusions) THE MARKET IS STABLE HOWEVER IT IS RELATIVELY STABLE; PRICES ARE AFFORDABLE & RATES ARE FAVORABLE. THERE IS AN LIMITED OF AVAILABLE LISTINGS & THE FORECLOSURE RATE IS LOW; HOWEVER THE ABSORPTION RATE IS HEALTHY & THE LIST TO SALES PRICE RATIO IS HEALTHY. OVERPRICED PROPERTIES ARE STAYING ON THE MARKET FOR EXTENDED PERIODS OF TIME.

**SITE**

| Dimensions SEE PLAT MAP | Area 7,405 | Shape RECTANGULAR | View MTNS/HILLS |
|---|---|---|---|

Specific Zoning Classification R1    Zoning Description SINGLE FAMILY RESIDENTIAL
Zoning Compliance [X] Legal [ ] Legal Nonconforming (Grandfathered Use) [ ] No Zoning [ ] Illegal (describe) N/A
Is the highest and best use of subject property as improved (or as proposed per plans and specifications) the present use? [X] Yes [ ] No If No, describe.
N/A

| Utilities | Public | Other (describe) | | Public | Other (describe) | Off-site Improvements–Type | Public | Private |
|---|---|---|---|---|---|---|---|---|
| Electricity | [X] | | Water | [X] | | Street ASPHALT | [X] | |
| Gas | [X] | | Sanitary Sewer | [X] | | Alley NONE | | |

FEMA Special Flood Hazard Area [ ] Yes [X] No   FEMA Flood Zone X   FEMA Map # 06065C2034G   FEMA Map Date 08/28/2008
Are the utilities and/or off-site improvements typical for the market area? [X] Yes [ ] No If No, describe.
Are there any adverse site conditions or external factors (easements, encroachments, environmental conditions, land uses, etc.)? [ ] Yes [X] No If Yes, describe.
NO ADVERSE EASEMENTS OR ENCROACHMENTS WERE OBSERVED. THE TITLE REPORT WAS NOT REVIEWED . GATED COMMUNITY/DEVELOPMENT 24 HOUR FOR SECURITY. SUBJECT IS LOCATED ON A CUL-DE-SAC OFFHILL CONTEMPORARY DESIGN WITH VIEW OF MTS FROM REAR, SIDES VACANT LOT ; NO ADVERSE AFFECT.

**IMPROVEMENTS**

| Units [X] One [ ] One with Accessory Unit | Concrete Slab [X] Crawl Space | Foundation Walls CONC/AVERAGE | Floors Wood,TILE,TEXT/AVG |
|---|---|---|---|
| # of Stories 3 Story/OFF HILL | [ ] Full Basement [ ] Partial Basement | Exterior Walls STUC/AVERAGE | Walls Drywall/PLASTER/AVG |
| Type [X] Det. [ ] Att. [ ] S-Det/End Unit | Basement Area sq. ft. | Roof Surface CAL SHAKE/AVG | Trim/Finish WD.PAINT/AVG |
| [X] Existing [ ] Proposed [ ] Under Const. | Basement Finish % | Gutters & Downspouts YES /PARTIAL | Bath Floor TILE/AVG |
| Design (Style) CONTEMPORARY | [ ] Outside Entry/Exit [ ] Sump Pump | Window Type ALUM. AVG | Bath Wainscot TILE/AVG |
| Year Built 2004 | Evidence of [ ] Infestation NONE | Storm Sash/Insulated N/A | Car Storage [ ] None |
| Effective Age (Yrs) 10-15 | [ ] Dampness [ ] Settlement | Screens YES/AVG | [X] Driveway # of Cars 2 |
| Attic [ ] None | Heating [X] FWA [ ] HWBB [ ] Radiant | Amenities [ ] Woodstove(s) # | Driveway Surface CONCRETE |
| [ ] Drop Stair [ ] Stairs | [X] Other FAU [ ] Fuel GAS | [X] Fireplace(s) # 1 [X] Fence | [X] Garage # of Cars 4 |
| [ ] Floor [X] Scuttle | Cooling [X] Central Air Conditioning | [X] Patio/Deck [ ] Porch | [ ] Carport # of Cars |
| [ ] Finished [ ] Heated | [ ] Individual [ ] Other | [ ] Pool [ ] Other | [X] Att. [ ] Det. [ ] Built-in |

| Appliances [ ] Refrigerator [X] Range/Oven [X] Dishwasher [X] Disposal [X] Microwave [ ] Washer/Dryer [X] Other (describe) FANHOOD |
|---|
Finished area above grade contains: 12 Rooms 5 Bedrooms 4.00 Bath(s) 4,481 Square Feet of Gross Living Area Above Grade

Additional features (special energy efficient items, etc.).

Describe the condition of the property (including needed repairs, deterioration, renovations, remodeling, etc.). NO APPARENT FUNCTIONAL OR PHYSICAL INADEQUACIES NOTED. THE SUBJECT HAS BEEN ADEQUATELY MAINTAINED & THROUGHOUT THE YEARS. THE SUBJECT IS IN AVERAGE CONDITION AND IS OF AVERAGE QUALITY. PLEASE SEE ATTACHED COST TO REPAIR ESTIMATE FROM LIC.
*************SEE ATTACHED PAGE 3 FOR SUBJECT COMMENTS**************SEE ATTACHED COST TO REPAIR ESTIMATE FROM LIC. CONTRACT #934200 EC PRECISE DESIGNS TOTALING $63,700.00 WORTH OF REPAIRS

Are there any physical deficiencies or adverse conditions that affect the livability, soundness, or structural integrity of the property? [ ] Yes [X] No If Yes, describe
N/A

Does the property generally conform to the neighborhood (functional utility, style, condition, use, construction, etc.)? [X] Yes [ ] No If No, describe N/A

| | |
|---|---|
| Freddie Mac Form 70   March 2005 | Fannie Mae Form 1004   March 2005 |

Produced by ClickFORMS Software 800-622-8727    Page 1 of 18

# EXHIBIT A

File No.   0154-17

## Uniform Residential Appraisal Report

| There are | comparable properties currently offered for sale in the subject neighborhood ranging in price from $ | | to $ | . |

| There are | comparable sales in the subject neighborhood within the past twelve months ranging in sale price from $ | | to $ | . |

| FEATURE | SUBJECT | COMPARABLE SALE # 1 | | COMPARABLE SALE # 2 | | COMPARABLE SALE # 3 | |
|---|---|---|---|---|---|---|---|
| Address | 28841 YOSEMITE PL | 29031 YOSEMITE PLACE | | 29318 STAMPEDE WAY | | 22623 CASCADE DRIVE | |
| | CANYON LAKE, CA 92587-7809 | CANYON LAKE, CA 92587 | | CANYON LAKE, CA 92587 | | CANYON LAKE, CA 92587 | |
| Proximity to Subject | | 0.13 miles NW | | 0.70 miles W | | 0.64 miles S | |
| Sale Price | $ EST | $ 735,000 | | $ 655,000 | | $ 875,000 | |
| Sale Price/Gross Liv. Area | $ 0.00 sq. ft. | $ 226.36 sq. ft. | | $ 181.99 sq. ft. | | $ 208.43 sq. ft. | |
| Data Source(s) | | MLS/TITLE: DOM 16 | | MLS/TITLE: DOM 123 | | MLS/TITLE: DOM 66 | |
| Verification Source(s) | | CLOSED | | CLOSED | | CLOSED | |
| VALUE ADJUSTMENTS | DESCRIPTION | DESCRIPTION | +(-) $ Adjustment | DESCRIPTION | +(-) $ Adjustment | DESCRIPTION | +(-) $ Adjustment |
| Sale or Financing | | CONVENTIONAL | | CONVENTIONAL | | CONV | |
| Concessions | | $0 | | $0 | | $0 | |
| Date of Sale/Time | | 12/8/17 | | 11/10/17 | | 04/06/17 | |
| Location | Average | AVERAGE | | AVERAGE | | AVERAGE | |
| Leasehold/Fee Simple | FEE SIMPLE | FEE SIMPLE | | FEE SIMPLE | | FEE SIMPLE | |
| Site | 7,405 | 28,749 | -21,344 | 10,019 | -2,614 | 8,712 | -1,307 |
| View | MTNS/HILLS | MTNS/HILLS | | LAKE VIEW | -25,000 | LAKE VIEW | -25,000 |
| Design (Style) | CONTEMPORARY | CONTEMPORARY | | CONTEMPORARY | | CONTEMPORARY | |
| Quality of Construction | AVERAGE | AVERAGE | | AVERAGE | | AVERAGE | |
| Actual Age | 14 yrs | 18 yrs | | 14 yrs | | 10 yrs | |
| Condition | Average | GOOD | -64,000 | GOOD | -64,000 | GOOD | -64,000 |
| Above Grade | Total Bdrms Baths | Total Bdrms Baths | | Total Bdrms Baths | | Total Bdrms Baths | |
| Room Count | 12 5 4.00 | 11 5 3.00 | +5,000 | 10 3 3.00 | +5,000 | 11 4 4.00 | |
| Gross Living Area | 4,481 sq. ft. | 3,247 sq. ft. | +30,850 | 3,599 sq. ft. | +22,050 | 4,198 sq. ft. | +7,075 |
| Basement & Finished | NONE | NONE | | NONE | | NONE | |
| Rooms Below Grade | NONE | NONE | | NONE | | NONE | |
| Functional Utility | TYPICAL | TYPICAL | | TYPICAL | | TYPICAL | |
| Heating/Cooling | FAU/CAC | FAU/CAC | | FAU/CAC | | FAU/CAC | |
| Energy Efficient Items | STANDARD | STANDARD | | STANDARD | | STANDARD | |
| Garage/Carport | 4 GARAGE | 7 GARAGE | -15,000 | 3 GARAGE | +5,000 | 4 GARAGE | |
| Porch/Patio/Deck | PATIO/PORCH | PATIO/PORCH | | PATIO/PORCH | | PATIO/PORCH | |
| Fireplaces | FIREPLACE | FIREPLACE | | FIREPLACE | | FIREPLACE | |
| POOL | ASSOCIATION | POOL-COURT | -45,000 | ASSOCIATION | | ASSOCIATION | |
| APN# | 353-171-017 | 353-172-042 | | 353-041-034 | | 353-131-020 | |
| Net Adjustment (Total) | | + X - | $ -109,494 | + X - | $ -59,564 | + X - | $ -83,232 |
| Adjusted Sale Price | | Net Adj: -15% | | Net Adj: -9% | | Net Adj: -10% | |
| of Comparables | | Gross Adj: 25% | $ 625,506 | Gross Adj: 19% | $ 595,436 | Gross Adj: 11% | $ 791,768 |

I [X] did [ ] did not research the sale or transfer history of the subject property and comparable sales. If not, explain   N/A

My research [ ] did [X] did not reveal any prior sales or transfers of the subject property for the three years prior to the effective date of this appraisal.
Data source(s)  NDC & MLS

My research [ ] did [X] did not reveal any prior sales or transfers of the comparable sales for the year prior to the date of sale of the comparable sale.
Data source(s)  NDC & MLS

Report the results of the research and analysis of the prior sale or transfer history of the subject property and comparable sales (report additional prior sales on page 3).

| ITEM | SUBJECT | COMPARABLE SALE # 1 | COMPARABLE SALE # 2 | COMPARABLE SALE # 3 |
|---|---|---|---|---|
| Date of Prior Sale/Transfer | 08/21/2017 | | | |
| Price of Prior Sale/Transfer | NOTICE OF DEFAULT/$87,822 | | | |
| Data Source(s) | MLS/PUBLIC RECORD | MLS/PUBLIC RECORD | MLS/PUBLIC RECORD | MLS/PUBLIC RECORD |
| Effective Date of Data Source(s) | 01/02/2018 | 01/02/2018 | 01/02/2018 | 01/02/2018 |

Analysis of prior sale or transfer history of the subject property and comparable sales

Summary of Sales Comparison Approach   ALL OF THE COMPARABLE SALES WERE DERIVED FROM WITHIN THE SUBJECT'S COMPETITIVE MARKET AREA AND APPEARED TO BE THE MOST REPRESENTATIVE OF THE SUBJECT PROPERTY AS OF THE EFFECTIVE DATE OF VALUE. THE SUBJECT'S FINAL ESTIMATE OF VALUE FALLS WITHIN THE SUPPORTABLE RANGE OF COMPARABLES. SEE ADDITIONAL SALES FOR FURTHER SUPPORT. CONSERVATIVE APPROACH TO VALUE CONSIDERED DUE TO SUBJECTS PRESENT CONDITION AND NEED FOR REPAIRS AND THE STIGMA WHERE-EVER "MOLD" LIKE SUBSTANCE ARE PRESENT. ALL SALES ARE FROM "CANYONLAKE" DEVELOPMENT AND CLEARLY ESTABLISH MARKET VALUE.

Indicated Value by Sales Comparison Approach $   675,000

Indicated Value by: Sales Comparison Approach $   675,000   Cost Approach (if developed) $   686,640   Income Approach (if developed) $   0

THE SALES COMPARISON IS DEEMED MOST APPROPRIATE/RELIABLE FOR DETERMINING VALUE IN THIS REPORT. THE COST APPROACH IS WEIGHED SECONDARILY, BUT IS ONLY BEING USED FOR SUPPORT. THE INCOME APPROACH IS NOT APPLICABLE HERE.

This appraisal is made [X] "as is," [ ] subject to completion per plans and specifications on the basis of a hypothetical condition that the improvements have been completed, [ ] subject to the following repairs or alterations on the basis of a hypothetical condition that the repairs or alterations have been completed, or [ ] subject to the following required inspection based on the extraordinary assumption that the condition or deficiency does not require alteration or repair:

Based on a complete visual inspection of the interior and exterior areas of the subject property, defined scope of work, statement of assumptions and limiting conditions, and appraiser's certification, my (our) opinion of the market value, as defined, of the real property that is the subject of this report is $   675,000   , as of   01/012018   , which is the date of inspection and the effective date of this appraisal.

Freddie Mac Form 70   March 2005

Fannie Mae Form 1004   March 2005

HALL & ASSOCIATES                                      File No.   0154-17

# EXHIBIT A
## Uniform Residential Appraisal Report

---

**ADDITIONAL COMMENTS**

------ NOTES ON SUBJECT: 3 STORY CONTEMPORARY DESIGN SFR WITH 5 BEDROOM 4 BATH UTILITY IN AVERAGE OVERALL CONDITION. 4 CAR GARAGE ATTACHED. LOCATED IN THE SELF CONTAINED GATED CANYON LAKE NEIGHBORHOOD OF RIVERSIDE, THE HOME SPANS 4481 SQ FT OVER THREE LEVELS WITH MOUNTAIN VIEWS. MAIN LEVEL BATHROOM LEAK APPEARS TO HAVE CAUSED VISIBLE MOLD IN LOWER LEVEL BEDROOM CEILING AND CEILING OVER WET BAR.

FOR A MORE DETAILED REPORT OF THE SUBJECT PLEASE SEEK A HOME INSPECTION FROM A QUALIFIED INDIVIDUAL. THE VISUAL INSPECTION OF THE ABOVE ASPECTS IS TO INSURE THAT THE SUBJECT PROPERTY MEETS FHA STANDARDS FOR LENDING PURPOSES. THIS REPORT IS NOT A HOME INSPECTION. ALSO, APPRAISER IS NOT AN EXPERT IN SOIL, STRUCTURAL, SEISMIC, ENVIRONMENTAL, GEOLOGICAL, DRAINAGE, ELECTRICAL, MECHANICAL OR LEGAL CONDITIONS.

>>> NOTES ON SALES COMPARISON APPROACH:

ALL COMPS ARE GOOD INDICATORS OF VALUE AND ARE THE BEST AVAILABLE AT THIS TIME BASED ON A COMBINATION OF RECENCY, SIMILARITY AND PROXIMITY.

***THE FOLLOWING ADJUSTMENTS WERE UTILIZED: SITE @ $1.00 PSF, BATHROOMS @ $2,000.00 EACH, GLA @ $30.00 PSF.

**** SEE COST TO REPAIR ESTIMATE FROM  LIC.CONTRACTOR LIC #934200  TOTALING $63,700.00 *****WORTH OF REPAIRS

***CONTINUED COMMENTS : CAYON LAKE DEVELOPMENT IS A PRIVATE COMMUNITY WITH 383 ACRE LAKE FOR BOATING, WATER SKIING, FISHING AND SWIMMING. THERE IS ALSO AN 18 HOLE GOLF COURSE, EQUESTRIAN CENTER, 16 PARKS  AND  BEACHES. A LODGE WITH RESTURANTS & BAR, TENNIS, SWIMMING POOL, SANDY BEACH AND BOAT MARINA.****

---

**COST APPROACH**

Provide adequate information for the lender/client to replicate your cost figures and calculations.
Support for the opinion of site value (summary of comparable land sales or other methods for estimating site value)

| ESTIMATED | [ ] REPRODUCTION OR | [X] REPLACEMENT COST NEW | OPINION OF SITE VALUE | | | =$ | 100,000 |
|---|---|---|---|---|---|---|---|
| Source of cost data  MARSHALL & SWIFT: LOCAL TRADE JOURNALS | | | Dwelling | 4,481 | Sq. Ft. @ $  135.00 | =$ | 604,935 |
| Quality rating from cost service     AVG     Effective date of cost data     06/12 | | | | | Sq. Ft. @ $ | =$ | |
| Comments on Cost Approach (gross living area calculations, depreciation, etc.) | | | HARDSCAPE/PATIO | | | | 50,000 |
| THE SUBJECT'S LAND TO IMPROVEMENT RATIO IS TYPICAL FOR THIS | | | Garage/Carport | 700 | Sq. Ft. @ $  60.00 | =$ | 42,000 |
| AREA AND HAS NO EFFECT ON MARKETABILITY. COST FIGURES ARE | | | Total Estimate of Cost-new | | | =$ | 696,935 |
| FROM MARSHALL & SWIFT ALONG WITH OTHER RELIABLE SOURCES IN | | | Less     Physical   23 | Functional   0 | External   0 | | |
| THE AREA. | | | Depreciation   160,295 | 0 | 0 | =$ ( | 160,295 ) |
| | | | Depreciated Cost of Improvements | | | =$ | 536,640 |
| THE ESTIMATED REMAINING ECONOMIC LIFE IS 40-45 YEARS. | | | "As-is" Value of Site Improvements | | | =$ | 50,000 |
| Estimated Remaining Economic Life (HUD and VA only)     40-45     Years | | | Indicated Value By Cost Approach | | | =$ | 686,640 |

---

**INCOME**

| Estimated Monthly Market Rent $   0     X Gross Multiplier   0.00   =$   0     Indicated Value by Income Approach |
|---|

Summary of Income Approach (including support for market rent and GRM)

---

**PUD INFORMATION**

Is the developer/builder in control of the Homeowner's Association (HOA)?  [ ] Yes  [ ] No  Unit type(s)  [ ] Detached  [ ] Attached

Provide the following information for PUDs ONLY if the developer/builder is in control of the HOA and the subject property is an attached dwelling unit.

Legal Name of Project  N/A

| Total number of phases   N/A | Total number of units   N/A | Total number of units sold   N/A | |
|---|---|---|---|
| Total number of units rented   N/A | Total number of units for sale   N/A | Data source(s)  N/A | |

Was the project created by the conversion of existing building(s) into a PUD?  [ ] Yes  [ ] No  If Yes, date of conversion.  N/A

Does the project contain any multi-dwelling units?  [ ] Yes  [ ] No  Data source.  N/A

Are the units, common elements, and recreation facilities complete?  [ ] Yes  [ ] No  If No, describe the status of completion.  N/A

Are the common elements leased to or by the Homeowner's Association?  [ ] Yes  [ ] No  If Yes, describe the rental terms and options.  N/A

Describe common elements and recreational facilities.   N/A

---

# EXHIBIT A

PARTIAL SUMMARIES

EXTRA COMPARABLES 4-5-6

File No.    0154-17

| | | |
|---|---|---|
| Borrower | ASAFU | |
| Property Address | 28841 YOSEMITE PL | |
| City CANYON LAKE | County RIVERSIDE | State CA   Zip Code 92587-7809 |
| Lender/Client | FRED ADJAYE | Address 28841 YOSEMITE PL, CANYON LAKE, CA 92587 |

| FEATURE | SUBJECT | COMPARABLE SALE # 4 | | COMPARABLE SALE # 5 | | COMPARABLE SALE # 6 | |
|---|---|---|---|---|---|---|---|
| Address | 28841 YOSEMITE PL | 30347 CLEAR WATER DRIVE | | 22959 GAINT FIR PLACE | | 28871 YOSEMITE PL | |
| | CANYON LAKE, CA 92587-7809 | CANYON LAKE, CA 92587 | | CANYON LAKE, CA 92587 | | CANYON LAKE, CA 92587 | |
| Proximity to Subject | | 1.33 miles SE | | 0.09 miles NE | | 0.01 miles NW | |
| Sale Price | $ EST | $ 720,000 | | $ 727,000 | | $ 829,000 | |
| Sale Price/Gross Liv. Area | $ 0.00 sq. ft. | $ 178.35 sq. ft. | | $ 158.73 sq. ft. | | $ 190.27 sq. ft. | |
| Data Source(s) | | MLS/TITLE; DOM 151 | | MLS/TITLE: DOM 140 | | MLS/TITLE ,DOM 12 | |
| Verification Source(s) | | CLOSED | | ACTIVE LISTING | | ACTIVE LISTING | |
| VALUE ADJUSTMENTS | DESCRIPTION | DESCRIPTION | +(-) $ Adjustment | DESCRIPTION | +(-) $ Adjustment | DESCRIPTION | +(-) $ Adjustment |
| Sale or Financing | | CONV | | ACTIVE LISTING | | ACTIVE LISTING | |
| Concessions | | $0 | | NONE | | NONE | |
| Date of Sale/Time | | 7/14/17 | | ACTIVE LISTING | | ACTIVE LISTING | |
| Location | Average | WATERFRONT | -50,000 | AVERAGE | | AVERAGE | |
| Leasehold/Fee Simple | FEE SIMPLE | FEE SIMPLE | | FEE SIMPLE | | FEE SIMPLE | |
| Site | 7,405 | 7,405 | 0 | 12,197 | -4,792 | 9,583 | -2,178 |
| View | MTNS/HILLS | LAKEVIEW | -25,000 | MTNS/HILLS | | MTNS/HILLS | |
| Design (Style) | CONTEMPORARY | CONTEMPORARY | | CONTEMPORARY | | CONTEMPORARY | |
| Quality of Construction | AVERAGE | AVERAGE | | AVERAGE | | AVERAGE | |
| Actual Age | 14 yrs | 14 yrs | | 30 yrs | | 14 YRS | |
| Condition | Average | GOOD | -64,000 | GOOD | -64,000 | GOOD | -64,000 |
| Above Grade | Total Bdrms. Baths | Total Bdrms. Baths | | Total Bdrms. Baths | | Total Bdrms. Baths | |
| Room Count | 12   5   4.00 | 10   4   4.50 | -2,500 | 12   6   4.5 | -2,500 | 12   5   4.00 | |
| Gross Living Area | 4,481 sq. ft. | 4,037 sq. ft. | +11,100 | 4,580 sq. ft. | -2,475 | 4,357 sq. ft. | +3,100 |
| Basement & Finished | NONE | NONE | | NONE | | NONE | |
| Rooms Below Grade | NONE | NONE | | NONE | | NONE | |
| Functional Utility | TYPICAL | TYPICAL | | TYPICAL | | TYPICAL | |
| Heating/Cooling | FAU/CAC | FAU/CAC | | FAU/CAC | | FAU/CAC | |
| Energy Efficient Items | STANDARD | STANDARD | | STANDARD | | STANDARD | |
| Garage/Carport | 4 GARAGE | 3 GARAGE | +5,000 | 4 GARAGE | | 3 GARAGE | +5,000 |
| Porch/Patio/Deck | PATIO/PORCH | PATIO/PORCH | | PATIO/PORCH | | PATIO/PORCH | |
| Fireplaces | FIREPLACE | FIREPLACE | | FIREPLACE | | FIREPLACE | |
| POOL | ASSOCIATION | ASSOCIATION | | PRIVATE | -35,000 | PRIVATE | -35,000 |
| APN# | 353-171-017 | 355-103-032 | | 353-171-008 | | 353-171-016 | |
| Net Adjustment (Total) | | + X - | $ -125,400 | + X - | $ -108,767 | + X - | $ -93,078 |
| Adjusted Sale Price | | Net Adj: -17% | | Net Adj: -15% | | Net Adj: -11% | |
| of Comparables | | Gross Adj: 22% | $ 594,600 | Gross Adj: 15% | $ 618,233 | Gross Adj: 13% | $ 735,922 |

Report the results of the research and analysis of the prior sale or transfer history of the subject property and comparable sales

| ITEM | SUBJECT | COMPARABLE SALE # 4 | COMPARABLE SALE # 5 | COMPARABLE SALE # 6 |
|---|---|---|---|---|
| Date of Prior Sale/Transfer | 08/21/2017 | | | |
| Price of Prior Sale/Transfer | NOTICE OF DEFAULT/$87,822 | | | |
| Data Source(s) | MLS/PUBLIC RECORD | MLS/PUBLIC RECORD | MLS/PUBLIC RECORD | MLS/PUBLIC RECORD |
| Effective Date of Data Source(s) | 01/02/2018 | 01/02/2018 | 01/02/2018 | 01/02/2018 |

Analysis of prior sale or transfer history of the subject property and comparable sales

Summary of Sales Comparison Approach ADDITIONAL SALES ADDED TO FURTHER SUPPORT DERIVED VALUE ESTIMATE. COMPARABLE #6 IS AN ACTIVE LISTING AND INDICATIVE OF CURRENT PRICING. ****** ACTIVE LISTING ON STREET****** 28800 YOSEMITE PLACE CANYON LAKE, CA 92587 4-BEDROOM   3 BATHS 4000 SF YEAR: 2002 DOM/204 SPOKE WITH AGENT OF RECORD "STEPHEN" 310 493-1999 LISTED $519,000.00 ( TOTAL-FIXER) $125,000.00 WORTH OF REPAIRS . COMP#4 IS A CLOSED SALE , ADJUSTED FOR SUPERIOR LOCATION AND VIEW AMENITY. COMPS 5 & 6 ARE SIMILAR TO SUBJECT IN ALL ASPECTS , ADJUSTED FOR THERE RESPECTIVE DIFFERENCES.

SALES COMPARISON ANALYSIS

**EXHIBIT A**

**Uniform Residential Appraisal Report**    File No.    0154-17

This report form is designed to report an appraisal of a one-unit property or a one-unit property with an accessory unit; including a unit in a planned unit development (PUD). This report form is not designed to report an appraisal of a manufactured home or a unit in a condominium or cooperative project.

This appraisal report is subject to the following scope of work, intended use, intended user, definition of market value, statement of assumptions and limiting conditions, and certifications. Modifications, additions, or deletions to the intended use, intended user, definition of market value, or assumptions and limiting conditions are not permitted. The appraiser may expand the scope of work to include any additional research or analysis necessary based on the complexity of this appraisal assignment. Modifications or deletions to the certifications are also not permitted. However, additional certifications that do not constitute material alterations to this appraisal report, such as those required by law or those related to the appraiser's continuing education or membership in an appraisal organization, are permitted.

## SCOPE OF WORK: The scope of work for this appraisal is defined by the complexity of this appraisal assignment and the reporting requirements of this appraisal report form, including the following definition of market value, statement of assumptions and limiting conditions, and certifications. The appraiser must, at a minimum: (1) perform a complete visual inspection of the interior and exterior areas of the subject property, (2) inspect the neighborhood, (3) inspect each of the comparable sales from at least the street, (4) research, verify, and analyze data from reliable public and/or private sources, and (5) report his or her analysis, opinions, and conclusions in this appraisal report.

## INTENDED USE: The intended use of this appraisal report is for the lender/client to evaluate the property that is the subject of this appraisal for a mortgage finance transaction.

## INTENDED USER: The intended user of this appraisal report is the lender/client.

## DEFINITION OF MARKET VALUE: The most probable price which a property should bring in a competitive and open market under all conditions requisite to a fair sale, the buyer and seller, each acting prudently, knowledgeably and assuming the price is not affected by undue stimulus. Implicit in this definition is the consummation of a sale as of a specified date and the passing of title from seller to buyer under conditions whereby: (1) buyer and seller are typically motivated; (2) both parties are well informed or well advised, and each acting in what he or she considers his or her own best interest; (3) a reasonable time is allowed for exposure in the open market; (4) payment is made in terms of cash in U. S. dollars or in terms of financial arrangements comparable thereto; and (5) the price represents the normal consideration for the property sold unaffected by special or creative financing or sales concessions* granted by anyone associated with the sale.

*Adjustments to the comparables must be made for special or creative financing or sales concessions. No adjustments are necessary for those costs which are normally paid by sellers as a result of tradition or law in a market area; these costs are readily identifiable since the seller pays these costs in virtually all sales transactions. Special or creative financing adjustments can be made to the comparable property by comparisons to financing terms offered by a third party institutional lender that is not already involved in the property or transaction. Any adjustment should not be calculated on a mechanical dollar for dollar cost of the financing or concession but the dollar amount of any adjustment should approximate the market's reaction to the financing or concessions based on the appraiser's judgment.

## STATEMENT OF ASSUMPTIONS AND LIMITING CONDITIONS: The appraiser's certification in this report is subject to the following assumptions and limiting conditions:

1. The appraiser will not be responsible for matters of a legal nature that affect either the property being appraised or the title to it, except for information that he or she became aware of during the research involved in performing this appraisal. The appraiser assumes that the title is good and marketable and will not render any opinions about the title.

2. The appraiser has provided a sketch in this appraisal report to show the approximate dimensions of the improvements. The sketch is included only to assist the reader in visualizing the property and understanding the appraiser's determination of its size.

3. The appraiser has examined the available flood maps that are provided by the Federal Emergency Management Agency (or other data sources) and has noted in this appraisal report whether any portion of the subject site is located in an identified Special Flood Hazard Area. Because the appraiser is not a surveyor, he or she makes no guarantees, express or implied, regarding this determination.

4. The appraiser will not give testimony or appear in court because he or she made an appraisal of the property in question, unless specific arrangements to do so have been made beforehand, or as otherwise required by law.

5. The appraiser has noted in this appraisal report any adverse conditions (such as needed repairs, deterioration, the presence of hazardous wastes, toxic substances, etc.) observed during the inspection of the subject property or that he or she became aware of during the research involved in performing this appraisal. Unless otherwise stated in this appraisal report, the appraiser has no knowledge of any hidden or unapparent physical deficiencies or adverse conditions of the property (such as, but not limited to, needed repairs, deterioration, the presence of hazardous wastes, toxic substances, adverse environmental conditions, etc.) that would make the property less valuable, and has assumed that there are no such conditions and makes no guarantees or warranties, express or implied. The appraiser will not be responsible for any such conditions that do exist or for any engineering or testing that might be required to discover whether such conditions exist. Because the appraiser is not an expert in the field of environmental hazards, this appraisal report must not be considered as an environmental assessment of the property.

6. The appraiser has based his or her appraisal report and valuation conclusion for an appraisal that is subject to satisfactory completion, repairs, or alterations on the assumption that the completion, repairs, or alterations of the subject property will be performed in a professional manner.

PEREZ & ASSOCIATES

Uniform Residential Appraisal Report   File No.   0154-17

# EXHIBIT A

**APPRAISER'S CERTIFICATION:** The Appraiser certifies and agrees that:

1. I have, at a minimum, developed and reported this appraisal in accordance with the scope of work requirements stated in this appraisal report.

2. I performed a complete visual inspection of the interior and exterior areas of the subject property. I reported the condition of the improvements in factual, specific terms. I identified and reported the physical deficiencies that could affect the livability, soundness, or structural integrity of the property.

3. I performed this appraisal in accordance with the requirements of the Uniform Standards of Professional Appraisal Practice that were adopted and promulgated by the Appraisal Standards Board of The Appraisal Foundation and that were in place at the time this appraisal report was prepared.

4. I developed my opinion of the market value of the real property that is the subject of this report based on the sales comparison approach to value. I have adequate comparable market data to develop a reliable sales comparison approach for this appraisal assignment. I further certify that I considered the cost and income approaches to value but did not develop them, unless otherwise indicated in this report.

5. I researched, verified, analyzed, and reported on any current agreement for sale for the subject property, any offering for sale of the subject property in the twelve months prior to the effective date of this appraisal, and the prior sales of the subject property for a minimum of three years prior to the effective date of this appraisal, unless otherwise indicated in this report.

6. I researched, verified, analyzed, and reported on the prior sales of the comparable sales for a minimum of one year prior to the date of sale of the comparable sale, unless otherwise indicated in this report.

7. I selected and used comparable sales that are locationally, physically, and functionally the most similar to the subject property.

8. I have not used comparable sales that were the result of combining a land sale with the contract purchase price of a home that has been built or will be built on the land.

9. I have reported adjustments to the comparable sales that reflect the market's reaction to the differences between the subject property and the comparable sales.

10. I verified, from a disinterested source, all information in this report that was provided by parties who have a financial interest in the sale or financing of the subject property.

11. I have knowledge and experience in appraising this type of property in this market area.

12. I am aware of, and have access to, the necessary and appropriate public and private data sources, such as multiple listing services, tax assessment records, public land records and other such data sources for the area in which the property is located.

13. I obtained the information, estimates, and opinions furnished by other parties and expressed in this appraisal report from reliable sources that I believe to be true and correct.

14. I have taken into consideration the factors that have an impact on value with respect to the subject neighborhood, subject property, and the proximity of the subject property to adverse influences in the development of my opinion of market value. I have noted in this appraisal report any adverse conditions (such as, but not limited to, needed repairs, deterioration, the presence of hazardous wastes, toxic substances, adverse environmental conditions, etc.) observed during the inspection of the subject property or that I became aware of during the research involved in performing this appraisal. I have considered these adverse conditions in my analysis of the property value, and have reported on the effect of the conditions on the value and marketability of the subject property.

15. I have not knowingly withheld any significant information from this appraisal report and, to the best of my knowledge, all statements and information in this appraisal report are true and correct.

16. I stated in this appraisal report my own personal, unbiased, and professional analysis, opinions, and conclusions, which are subject only to the assumptions and limiting conditions in this appraisal report.

17. I have no present or prospective interest in the property that is the subject of this report, and I have no present or prospective personal interest or bias with respect to the participants in the transaction. I did not base, either partially or completely, my analysis and/or opinion of market value in this appraisal report on the race, color, religion, sex, age, marital status, handicap, familial status, or national origin of either the prospective owners or occupants of the subject property or of the present owners or occupants of the properties in the vicinity of the subject property or on any other basis prohibited by law.

18. My employment and/or compensation for performing this appraisal or any future or anticipated appraisals was not conditioned on any agreement or understanding, written or otherwise, that I would report (or present analysis supporting) a predetermined specific value, a predetermined minimum value, a range or direction in value, a value that favors the cause of any party, or the attainment of a specific result or occurrence of a specific subsequent event (such as approval of a pending mortgage loan application).

19. I personally prepared all conclusions and opinions about the real estate that were set forth in this appraisal report. If I relied on significant real property appraisal assistance from any individual or individuals in the performance of this appraisal or the preparation of this appraisal report, I have named such individual(s) and disclosed the specific tasks performed in this appraisal report. I certify that any individual so named is qualified to perform the tasks. I have not authorized anyone to make a change to any item in this appraisal report; therefore, any change made to this appraisal is unauthorized and I will take no responsibility for it.

20. I identified the lender/client in this appraisal report who is the individual, organization, or agent for the organization that ordered and will receive this appraisal report.

EXHIBIT A

Uniform Residential Appraisal Report

21. The lender/client may disclose or distribute this appraisal report to: the borrower; another lender at the request of the borrower; the mortgagee or its successors and assigns; mortgage insurers; government sponsored enterprises; other secondary market participants; data collection or reporting services; professional appraisal organizations; any department, agency, or instrumentality of the United States; and any state, the District of Columbia, or other jurisdictions; without having to obtain the appraiser's or supervisory appraiser's (if applicable) consent. Such consent must be obtained before this appraisal report may be disclosed or distributed to any other party (including, but not limited to, the public through advertising, public relations, news, sales, or other media).

22. I am aware that any disclosure or distribution of this appraisal report by me or the lender/client may be subject to certain laws and regulations. Further, I am also subject to the provisions of the Uniform Standards of Professional Appraisal Practice that pertain to disclosure or distribution by me.

23. The borrower, another lender at the request of the borrower, the mortgagee or its successors and assigns, mortgage insurers, government sponsored enterprises, and other secondary market participants may rely on this appraisal report as part of any mortgage finance transaction that involves any one or more of these parties.

24. If this appraisal report was transmitted as an "electronic record" containing my "electronic signature," as those terms are defined in applicable federal and/or state laws (excluding audio and video recordings), or a facsimile transmission of this appraisal report containing a copy or representation of my signature, the appraisal report shall be as effective, enforceable and valid as if a paper version of this appraisal report were delivered containing my original hand written signature.

25. Any intentional or negligent misrepresentation(s) contained in this appraisal report may result in civil liability and/or criminal penalties including, but not limited to, fine or imprisonment or both under the provisions of Title 18, United States Code, Section 1001, et seq., or similar state laws.

## SUPERVISORY APPRAISER'S CERTIFICATION: The Supervisory Appraiser certifies and agrees that:

1. I directly supervised the appraiser for this appraisal assignment, have read the appraisal report, and agree with the appraiser's analysis, opinions, statements, conclusions, and the appraiser's certification.

2. I accept full responsibility for the contents of this appraisal report including, but not limited to, the appraiser's analysis, opinions, statements, conclusions, and the appraiser's certification.

3. The appraiser identified in this appraisal report is either a sub-contractor or an employee of the supervisory appraiser (or the appraisal firm), is qualified to perform this appraisal, and is acceptable to perform this appraisal under the applicable state law.

4. This appraisal report complies with the Uniform Standards of Professional Appraisal Practice that were adopted and promulgated by the Appraisal Standards Board of The Appraisal Foundation and that were in place at the time this appraisal report was prepared.

5. If this appraisal report was transmitted as an "electronic record" containing my "electronic signature," as those terms are defined in applicable federal and/or state laws (excluding audio and video recordings), or a facsimile transmission of this appraisal report containing a copy or representation of my signature, the appraisal report shall be as effective, enforceable and valid as if a paper version of this appraisal report were delivered containing my original hand written signature.

| APPRAISER | SUPERVISORY APPRAISER (ONLY IF REQUIRED) |
|---|---|
| Signature | Signature |
| Name  HECTOR M. PEREZ | Name |
| Company Name  PEREZ & ASSOCIATES | Company Name |
| Company Address  12501 PHILADELPHIA STREET | Company Address |
| WHITTIER, CA 90601 | |
| Telephone Number (626) 926-4838 | Telephone Number |
| Email Address  PEREZAPPRAISALS@HOTMAIL.COM | Email Address |
| Date of Signature and Report  1/04/2018 | Date of Signature |
| Effective Date of Appraisal  01/012018 | State Certification # |
| State Certification #  AR007743 | or State License # |
| or State License # | State |
| or Other (describe)  State # | Expiration Date of Certification or License |
| State  CA | |
| Expiration Date of Certification or License 10/31/2018 | SUBJECT PROPERTY |

ADDRESS OF PROPERTY APPRAISED
28841 YOSEMITE PL
CANYON LAKE, CA 92587-7809

APPRAISED VALUE OF SUBJECT PROPERTY $  675,000

LENDER/CLIENT
Name
Company Name  FRED ADJAYE
Company Address 28841 YOSEMITE PL
CANYON LAKE, CA 92587
Email Address

SUBJECT PROPERTY

☐ Did not inspect subject property
☐ Did inspect exterior of subject property from street
  Date of Inspection
☐ Did inspect interior and exterior of subject property
  Date of Inspection

COMPARABLE SALES
☐ Did not inspect exterior of comparable sales from street
☐ Did inspect exterior of comparable sales from street
  Date of Inspection

SUBJECT PHOTO ADDENDUM    File No.    0154-17

| Borrower | ASAFU | | | | | | |
|---|---|---|---|---|---|---|---|
| Property Address | 28841 YOSEMITE PL | | | | | | |
| City CANYON LAKE | | County | RIVERSIDE | State | CA | Zip Code | 92587-7809 |
| Lender/Client | FRED ADJAYE | | | Address | 28841 YOSEMITE PL, CANYON LAKE, CA 92587 | | |



**FRONT OF**
**SUBJECT PROPERTY**
28841 YOSEMITE PL
CANYON LAKE, CA 92587-7809



**REAR OF**
**SUBJECT PROPERTY**



**STREET SCENE**

# EXHIBIT A

PEREL & ASSOCIATES

File No.    0154-17

| Borrower | ASAFU | | | | | | |
|----------|-------|---|---|---|---|---|---|
| Property Address | 28841 YOSEMITE PL | | | | | | |
| City | CANYON LAKE | County | RIVERSIDE | State | CA | Zip Code | 92587-7809 |
| Lender/Client | FRED ADJAYE | | Address | 28841 YOSEMITE PL, CANYON LAKE, CA 92587 | | | |



ADDRESS



CLOSE UP



SIDE



BARBECUE/PATIO



AC CONDENSOR



VIEW FROM REAR / MOUNTAIN



VIEW



LIVING ROOM



DINING ROOM



FAU/CAC VENTS



KITCHEN



FAMILY ROOM

# EXHIBIT A

PEREZ & ASSOCIATES

File No.    0154-17

| Borrower | ASAFU | | | | | | |
|---|---|---|---|---|---|---|---|
| Property Address | 28841 YOSEMITE PL | | | | | | |
| City | CANYON LAKE | County | RIVERSIDE | State | CA | Zip Code | 92587-7809 |
| Lender/Client | FRED ADJAYE | | Address | 28841 YOSEMITE PL, CANYON LAKE, CA 92587 | | | |



MASTER BEDROOM



MASTER BATH



BATH



BEDROOM



BEDROOM



LAUNDRY ROOM



OFFICE



WET BAR



BEDROOM



BEDROOM



WATER HEATER



WATER INTRUSION LOWER LEVEL CEILING

# EXHIBIT A

BERG & ASSOCIATES
REAL ESTATE 1-2-3

File No.   0154-17

| Borrower | ASAFU | | | | | | |
|---|---|---|---|---|---|---|---|
| Property Address | 28841 YOSEMITE PL | | | | | | |
| City   CANYON LAKE | | County | RIVERSIDE | State | CA | Zip Code | 92587-7809 |
| Lender/Client   FRED ADJAYE | | | Address   28841 YOSEMITE PL, CANYON LAKE, CA 92587 | | | | |



**COMPARABLE SALE #**   1
29031 YOSEMITE PLACE
CANYON LAKE, CA 92587



**COMPARABLE SALE #**   2
29318 STAMPEDE WAY
CANYON LAKE, CA 92587



**COMPARABLE SALE #**   3
22623 CASCADE DRIVE
CANYON LAKE, CA 92587

**EXHIBIT A**

PEREL & ASSOCIATES

File No.   0154-17

| Borrower | ASAFU | | | | | | |
|---|---|---|---|---|---|---|---|
| Property Address | 28841 YOSEMITE PL | | | | | | |
| City   CANYON LAKE | | County | | RIVERSIDE | State | CA | Zip Code   92587-7809 |
| Lender/Client   FRED ADJAYE | | | | Address   28841 YOSEMITE PL, CANYON LAKE, CA 92587 | | | |



**COMPARABLE SALE #**   4
30347 CLEAR WATER DRIVE
CANYON LAKE, CA 92587



**COMPARABLE SALE #**   5
22959 GAINT FIR PLACE
CANYON LAKE, CA 92587



**COMPARABLE SALE #**   6
28871 YOSEMITE PL
CANYON LAKE, CA 92587

BEREL & ASSOCIATES

# EXHIBIT A

File No.   0154-17

| Borrower | ASAFU | | | | | |
|---|---|---|---|---|---|---|
| Property Address | 28841 YOSEMITE Pl. | | | | | |
| City  CANYON LAKE | | County | RIVERSIDE | State | CA | Zip Code  92587-7809 |
| Lender/Client   FRED ADJAYE | | | Address | 28841 YOSEMITE PL, CANYON LAKE, CA 92587 | | |



Data Deemed Reliable, But Not Guaranteed.
Copyright © 2004-2015 Lender Processing Services, Inc. All Rights Reserved. All other trademarks and copyrights are the property of their respective holders.
1/14/2016                                                                              Customer Service Rep:          dandre

FRED ADJAYE ASSOCIATES

File No.  0154-17

## LOCATION MAP ADDENDUM
# EXHIBIT A

| | | | | | | |
|---|---|---|---|---|---|---|
| Borrower | ASAFU | | | | | |
| Property Address | 28841 YOSEMITE PL | | | | | |
| City  CANYON LAKE | | County | RIVERSIDE | State | CA | Zip Code  92587-7809 |
| Lender/Client | FRED ADJAYE | | Address  28841 YOSEMITE PL, CANYON LAKE, CA 92587 | | | |



Sale 5
22950 GAINT FIR PLACE
CANYON LAKE, CA 92587
Sale: $727,000
0.09 miles NE

Sale 1
29031 YOSEMITE PLACE
CANYON LAKE, CA 92587
Sale: $735,000
0.13 miles NW

Sale 2
26318 STAMPEDE WAY
CANYON LAKE, CA 92587
Sale: $655,000
0.70 miles W

Subject
28841 YOSEMITE PL
CANYON LAKE, CA 92587-7809
APN: 353-171-017

Sale 6
28871 YOSEMITE PL
CANYON LAKE, CA 92587
Sale: $829,000
0.01 miles NW

Sale 3
22623 CASCADE DRIVE
CANYON LAKE, CA 92587
Sale: $875,000
0.64 miles S

Bing

# EXHIBIT A

| Borrower | ASAFU | | | | | | |
|---|---|---|---|---|---|---|---|
| Property Address | 28841 YOSEMITE PL | | | | | | |
| City CANYON LAKE | | County | | RIVERSIDE | State CA | Zip Code | 92587-7809 |
| Lender/Client FRED ADJAYE | | | | Address 28841 YOSEMITE PL, CANYON LAKE, CA 92587 | | | |



File No.    0154-17

# EXHIBIT A

| | | | | | |
|---|---|---|---|---|---|
| Borrower  ASAFU | | | | | |
| Property Address  28841 YOSEMITE PL | | | | | |
| City  CANYON LAKE | County | RIVERSIDE | State    CA | Zip Code    92587-7809 | |
| Lender/Client  FRED ADJAYE | | Address    28841 YOSEMITE PL, CANYON LAKE, CA 92587 | | | |



**General Star National Insurance Company**
**P O Box 10350 (Attn:  GSN)**
**Stamford, Connecticut 06904**

## REAL ESTATE APPRAISERS ERRORS & OMISSIONS INSURANCE POLICY

### DECLARATIONS PAGE

This is a claims made and reported policy. Please read this policy and all endorsements and attachments carefully.

Policy Number:  NJA327435A                      Renewal of Number:  NJA327435

1.  **NAMED INSURED:**  Hector M. Perez
    **STREET ADDRESS:**
        12501 Philadelphia Street
        Whittier, CA 90601

2.  **POLICY PERIOD:**  Inception Date:  02/01/2017          Expiration Date:  02/01/2018
        Effective 12:01 a.m. Standard Time at the address of the Named Insured.

3.  **LIMITS OF LIABILITY:**
        Each Claim:  $1,000,000
        Aggregate:  $1,000,000
    Claim Expenses have a separate Limit of Liability:
        Each Claim:  $1,000,000
        Aggregate:  $1,000,000

4.  **DEDUCTIBLE:**          Each Claim: $0_____          Aggregate: $0_____

5.  **RETROACTIVE DATE:**  02/01/2016
        If a date is indicated, this policy will not provide coverage for any Claim arising out of any act, error,
        omission or personal injury which occurred before such date.

6.  **ANNUAL PREMIUM:**                $697.00

    TOTAL Premium and Taxes/Surcharge :        $697.00

7.  **ENDORSEMENTS:**
    This policy is made and accepted subject to the printed policy form together with the following form(s) or
    endorsement(s).
        AP 00 0001 (08/11), AP 04 0001 (08/11),  AP 21 0002 (08/11),  AP 27 0004 (06/11), SGN 90 0001 (07/10),  AP 01 0004CA (08/11),
        AP 20 0001 (08/11), AP 06 0005CA (06/2011),

8.  **PRODUCER NAME:**  Mercer Consumer
    **STREET ADDRESS:**  P. O. Box 8146
        Des Moines, IA 50306-8146

_Timothy R Miller_
**Authorized Representative**

Producer Code:  26460                  Class Code:  73128
Date:    02/03/2017
AP 10 0001 06 11        © Copyright 2011, General Star Management Company, Stamford, CT        Page 1 of 1

# EXHIBIT A

Borrower   ASAFU

Property Address   28841 YOSEMITE PL

| City  CANYON LAKE | County | RIVERSIDE | State   CA | Zip Code   92587-7809 |
|---|---|---|---|---|

Lender/Client   FRED ADJAYE        Address   28841 YOSEMITE PL, CANYON LAKE, CA 92587



**Service and/or Items Not Provide:**

EC Precise Designs will not include:

- a. Building Department permits and/or other agency fees.
- a. Any work not in this agreement

**Payments:**

- a. EC Precise Designs shall receive the total contract of $ 42,700.00
- a. Progress payments will be based on completion of work and/or materials order from the supplier (stone). Invoices will be provide to the owner.
- a. Approximately time frame from start to finish full 7 working weeks. Delays may occur if there is a change of order, natural disaster, fire or bad weather condition and/or any other reason not involving the project. The time of extension must be in writing and sign by both parties.

Initial_____

PERRI & ASSOCIATES
FLOOD MAP ADDENDUM                    File No.    0154-17

| Borrower | ASAFU | | | | | | |
|---|---|---|---|---|---|---|---|
| Property Address | 28841 YOSEMITE PL | | | | | | |
| City CANYON LAKE | | County | RIVERSIDE | State | CA | Zip Code | 92587-7809 |
| Lender/Client FRED ADJAYE | | | Address | 28841 YOSEMITE PL. CANYON LAKE, CA 92587 | | | |



**Flood Map Legends**

**Flood Zones**

- Areas inundated by 500-year flooding
- Areas outside of the 100 and 500 year flood plains
- Area inundated by 100-year flooding
- Area inundated by 100-year flooding with velocity hazard
- Floodway areas
- Floodway areas with velocity hazard
- Areas of undetermined but possible flood hazard
- Areas not mapped on any published FIRM

**Flood Zone Determination**

SFHA (Flood Zone): **Out**
Within 250 ft. of multiple flood zones? **No**
Community: **060753**
Community Name: **CANYON LAKE, CITY OF**
Zone: **X**   Panel: **060753 2034G**   Panel Date: **08/28/2008**
FIPS Code: **06065**   Census Tract: **0427.17**

This Report is for the sole benefit of the Customer that ordered and paid for the Report and is based on the property information provided by that Customer. That Customer's use of this Report is subject to the terms agreed to by that Customer when acquiring this product. No third party is permitted to use or rely on this Report for any purpose. THE SELLER OF THIS REPORT MAKES NO REPRESENTATIONS OR WARRANTIES TO ANY PARTY CONCERNING THE CONTENT, ACCURACY OR COMPLETENESS OF THIS REPORT, INCLUDING ANY WARRANTY OF MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE. The seller of this Report shall not have any liability to any third party for any use or misuse of this Report.

Page 1 of 2

**EXHIBIT B**



**WELLS FARGO HOME MORTGAGE**

Return Mail Operations
PO Box 14411
Des Moines IA 50306-3411

Statement date
09/18/17

Loan number
0484356506

Property address
28841 YOSEMITE PL
CANYON LAKE, CA 92587

**Your loan has been referred to foreclosure. The amount to bring the account current may vary daily; prior to sending funds, call us for a reinstatement or payoff quote. A matured loan requires all balances to be paid in full. This does not change a sale date that may be scheduled.**

DCSF2TDTRR 023579DCSF2T00000027520708

ESTHER ASAFU-ADJAYE
FRED ASAFU-ADJAYE
28841 YOSEMITE PL
CANYON LAKE, CA 92587-7809

## Customer Service

 **Online**
wellsfargo.com

 **Correspondence**
PO Box 10335
Des Moines IA 50306

**Payments**
PO Box 14591
Des Moines IA 50306

 **Telephone**
1-800-868-0043

 **Fax**
1-866-278-1179

**Hours of operation**
Mon - Fri 7 a.m. - 7 p.m.
CT

We accept telecommunications relay service calls.

## Payment summary

| | |
|---|---|
| Principal | $777.56 |
| Interest | $3,124.32 |
| Escrow | $826.08 |
| **Current payment** 10/01/17 | **$4,727.96** |
| Overdue payment 08/01/15-09/01/17 | $92,386.93 |
| Unpaid late charge(s) | $274.30 |
| **Total payment due** 10/01/17 | **$97,389.19** |

## Balance summary

| | |
|---|---|
| **Unpaid principal balance** | **$735,829.94** |
| **Unapplied funds balance** | **$20.53** |
| Escrow balance | $-14,649.57 |
| *(Contact Customer Service for your payoff balance)* | |
| Interest rate | 5.122% |
| Maturity date | 04/49 |

## Year-to-date summary

| | |
|---|---|
| Total received* | $0.00 |
| Principal | $0.00 |
| Interest** | $0.00 |
| Taxes disbursed | $3,456.72 |

*This total may include the Unapplied funds balance from the Balance summary section.
**This information should not be used for tax purposes. If you have tax related questions, please consult your tax advisor.

## Informational messages

* No transactions have occurred on your loan between the last billing statement and this statement date.

## Important messages

**ATTENTION**
The foreclosure process may have started on your property. If you want to retain your home, please pay the full reinstatement amount owed immediately. Contact us right away to discuss the status of your mortgage. For helpful information on alternative repayment options, go to **wellsfargo.com/homeassist**. El proceso de ejecucion hipotecaria puede haber comenzado en su propiedad, favor de llamarnos al inmediatamente.

Avoid anyone who asks for a fee for counseling or a loan modification, or asks you to sign over the deed to your home, or to make your mortgage payments to anyone other than Wells Fargo Home Mortgage.

*Please detach and return with your payment.*

NNNNNNNNNN    DCSF2TDTRR 023579 1NNNNNNNN NNN NNN 001 002    056733    2054518E.1

RECORDING REQUESTED BY:
NORTH AMERICAN TITLE CO.

**EXHIBIT C**



DOC # 2006-0939524
12/22/2006 08:00A Fee:60.00
Page 1 of 18
Recorded in Official Records
County of Riverside
Larry W. Ward
Assessor, County Clerk & Recorder

RECORDING REQUESTED BY:
**WORLD SAVINGS BANK**

WHEN RECORDED MAIL TO:
**WORLD SAVINGS BANK**
**FINAL DOCUMENTATION**
**CLOSING DEPARTMENT**
**P.O. BOX 659548**
**SAN ANTONIO, TX 78265-9548**

LOAN NUMBER: 0044718096

NOTE AMOUNT: $862,500.00

AP# 363-171-017-4

TRA 023-003

| S | R | U | PAGE | SIZE | DA | MISC | LONG | RFD | COPY |
|---|---|---|------|------|------|------|------|-----|------|
| M | A | L | | 465 | 426 | PCOR NCOR | SMF | NCHG | EXAM 010 |



**DEED OF TRUST**

THIS IS A FIRST DEED OF TRUST WHICH SECURES A NOTE WHICH CONTAINS PROVISIONS ALLOWING FOR CHANGES IN MY INTEREST RATE, FREQUENCY AND AMOUNT OF PAYMENTS AND PRINCIPAL BALANCE (INCLUDING FUTURE ADVANCES AND DEFERRED INTEREST). AT LENDER'S OPTION THE SECURED NOTE MAY BE RENEWED OR RENEGOTIATED. THE SECURED NOTE PROVIDES FOR MONTHLY PAYMENTS OF PRINCIPAL AND INTEREST.

THE MAXIMUM AGGREGATE PRINCIPAL BALANCE SECURED BY THIS DEED OF TRUST IS $1,078,125.00 WHICH IS 125% OF THE ORIGINAL PRINCIPAL NOTE AMOUNT.

I.   **DEFINITIONS OF WORDS USED IN THIS DEED OF TRUST**
     **(A)   Security Instrument.** This Deed of Trust, which is dated **December 15, 2006,** will be called the "Security Instrument."

     **(B)   Borrower. ESTHER ASAFU-ADJAYE AND FRED ASAFU-ADJAYE, WIFE AND HUSBAND** sometimes will be called "Borrower" and sometimes simply "I" or "me."

     **(C)   Lender. WORLD SAVINGS BANK, FSB, ITS SUCCESSORS AND/OR ASSIGNEES,** will be called "Lender." Lender is a **FEDERAL SAVINGS BANK,** which is organized and exists under the laws of the United States. Lender's address is **1901 Harrison Street, Oakland, CA 94612** .

SD001A (2004-03-3)

DEFERRED INTEREST                                           Page 1

CA

LENDER'S USE ONLY

0 0 3

# EXHIBIT C

0044718096

**(D) Note.** The note signed by Borrower and having the same date as this Security Instrument, including all extensions, renewals, substitutions and modifications thereof, will be called the "Note." The Note shows that I owe Lender the original principal amount of U.S. **$862,500.00**, plus accrued and deferred interest and such other amounts as stated in the Note. I have promised to pay this debt in regularly scheduled periodic payments as provided in the Note and to pay the debt in full by **January 1, 2037** ("Maturity Date").

**(E) Property.** The property that is described below in Section III entitled "Description of the Property" will be called the "Property."

**(F) Sums Secured.** The amounts described below in Section II entitled "Borrower's Transfer of Rights in the Property" sometimes will be called the "Sums Secured."

**(G) Person.** Any person, organization, governmental authority or other party will be called "Person."

**(H) Trustor, Beneficiary, Trustee.** Borrower is the "Trustor," Lender is the "Beneficiary" and **Golden West Savings Association Service Co., A California Corporation** is the "Trustee."

## II.    BORROWER'S TRANSFER OF RIGHTS IN THE PROPERTY

I irrevocably grant and convey the Property to the Trustee, in trust for Lender, with a power of sale subject to the terms of this Security Instrument. This means that, by signing this Security Instrument, I am giving Lender and Trustee those rights that are stated in this Security Instrument and also those rights that the law gives to lenders who are beneficiaries of a deed of trust and to trustees of a deed of trust. I am giving Lender and Trustee these rights to protect Lender from possible losses that might result if I fail to:

(i)    pay all amounts owed to Lender under the Note and all other notes secured by this Security Instrument, called the "Secured Notes," including future advances made by Lender and any changes to the Secured Notes made with the written consent of Lender;

(ii)    pay, with interest, any amounts that Lender spends under Paragraphs 2 and 7 below to protect the value of the Property and Lender's rights in the Property; and

(iii)    keep all of my other promises and agreements under this Security Instrument, the Secured Notes and any changes to the Secured Notes made with the written consent of Lender.

## III.    DESCRIPTION OF THE PROPERTY

I give Trustee rights in the Property described below:

(i)    The Property which is located at **28841 YOSEMITE PL, CANYON LAKE, CA  92587-7809**. The legal description of the Property is attached as Exhibit "A" which is made a part of this Security Instrument. This Property is called the "Described Property."

(ii)    All buildings and other improvements that are located on the Described Property;

SD001B (2004-03-3)                                                              CA

DEFERRED INTEREST                              Page 2

# EXHIBIT C

0044718096

(iii)    All rights in other property that I have as owner of the Described Property. These rights are known as easements, rights and appurtenances attached to the Property;

(iv)    All rents or royalties and other income from the Described Property;

(v)    All mineral, oil and gas rights and profits, water rights and stock that are part of the Described Property;

(vi)    All rights that I have in the land which lies in the streets or roads in front of, behind or next to, the Described Property;

(vii)    All fixtures that are now or in the future will be on the Described Property or on the property described in subsection (ii) of this Section;

(viii)    All of the rights and property described in subsections (ii) through (vii) of this Section that I acquire in the future;

(ix)    All replacements of or additions to the property described in subsections (ii) through (viii) of this Section; and

(x)    All of the amounts that I pay to Lender under Paragraph 2 below.

## IV.    BORROWER'S RIGHT TO GRANT A SECURITY INTEREST IN THE PROPERTY AND BORROWER'S OBLIGATION TO DEFEND OWNERSHIP OF THE PROPERTY

I promise that: (i) I lawfully own the Property; (ii) I have the right to grant and convey the Property to Trustee; and (iii) there are no outstanding claims, charges, liens or encumbrances against the Property, except for those which are of public record.

I give a general warranty of title to Lender. This means that I will be fully responsible for any losses which Lender suffers because someone other than myself and the Trustee has some of the rights in the Property which I promise that I have. I promise that I will defend my ownership of the Property against any claims of such rights.

### COVENANTS

I promise and I agree with Lender as follows:

## 1.    BORROWER'S PROMISE TO PAY

I will pay to Lender, on time, all principal and interest due under the Secured Notes and any prepayment and late charges due under the Secured Notes.

## 2.    PAYMENTS FOR TAXES AND INSURANCE

### (A)    Borrower's Obligations

I will pay all amounts necessary to pay taxes and hazard insurance premiums on the Property as well as assessments, leasehold payments, ground rents or mortgage insurance premiums (if any).

# EXHIBIT C

0044718096

**(B)**     **Escrow Accounts**

Subject to applicable law, no escrow shall be required except upon written demand by Lender, in which case, I shall pay to Lender on the day payments are due under the Note, until the Note is paid in full, a sum ("Funds") for: (a) yearly taxes, penalties and assessments which may attain priority over this Security Instrument as a lien on the Property; (b) yearly leasehold payments or ground rents on the Property, if any; (c) yearly hazard or property insurance premiums; (d) yearly flood insurance premiums, if any; and (e) yearly mortgage insurance premiums, if any. These items are called "Escrow Items." Lender may, at any time, collect and hold Funds in an amount not to exceed the maximum amount a lender for a federally related mortgage loan may require for an escrow account under the federal Real Estate Settlement Procedures Act of 1974 as amended from time to time, 12 U.S.C. § 2601 et seq. ("RESPA"), unless another law that applies to the Funds sets a lesser amount. If so, Lender may, at any time, collect and hold Funds in an amount not to exceed the lesser amount. Lender may estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items in accordance with applicable law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is such an institution) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items. Lender may not charge me for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays me interest on the Funds and/or applicable law permits Lender to make such a charge. However, Lender may require me to pay a one-time charge for an independent real estate tax reporting service used by Lender in connection with this loan, unless applicable law provides otherwise. Unless an agreement is made or applicable law requires interest to be paid, Lender shall not be required to pay me any interest or earnings on the Funds. Lender shall give to me, without charge, an annual accounting of the Funds, showing credits and debits to the Funds and the purpose for which each debit to the Funds was made. The Funds are pledged as additional security for all sums secured by this Security Instrument.

If the Funds held by Lender exceed the amounts permitted to be held by applicable law, Lender shall account to me for the excess Funds in accordance with the requirements of applicable law. If the amount of the Funds held by Lender at any time is not sufficient to pay the Escrow Items when due, Lender may so notify me in writing, and, in such case I shall pay to Lender the amount necessary to make up the deficiency or shortage. I shall make up the deficiency or shortage in accordance with the requirements of the Lender, at its sole discretion, in the manner and times prescribed by RESPA.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to me any Funds held by Lender. If, under Paragraph 28, Lender shall acquire or sell the Property, Lender, prior to the acquisition or sale of the Property, shall apply any Funds held by Lender at the time of acquisition or sale as a credit against the sums secured by this Security Instrument.

SD001D (2004-03-3)

CA

# EXHIBIT C

0044718096

**3.    APPLICATION OF BORROWER'S PAYMENTS**

Unless applicable law requires otherwise, Lender will apply each of my payments under the Secured Notes and under Paragraphs 1 and 2 above in the following order and for the following purposes:

First, to pay prepayment charges due under the Secured Notes;

Second, to pay any advances due to Lender under this Security Instrument;

Third, to pay the amounts due to Lender under Paragraph 2 above;

Fourth, to pay interest due under the Secured Notes;

Fifth, to pay deferred interest due under the Secured Notes;

Sixth, to pay principal due under the Secured Notes;

Last, to pay late charges due under the Secured Notes.

**4.    BORROWER'S OBLIGATION TO PAY CHARGES, ASSESSMENTS AND CLAIMS**

I will pay all taxes, assessments and any other charges and fines that may be imposed on the Property and that may be superior to this Security Instrument.

I will also make payments due under my lease if I am a tenant on the Property and I will pay ground rents (if any) due on the Property. I will pay these amounts either by making the payments to Lender that are described in Paragraph 2 above or by making the payments on time to the Person owed them.

Any claim, demand or charge that is made against property because an obligation has not been fulfilled is known as a **lien.** I will promptly pay or satisfy all liens against the Property that may be superior to this Security Instrument. However, this Security Instrument does not require me to satisfy a superior lien if: (A) I agree, in writing, to pay the obligation which gave rise to the superior lien and Lender approves in writing the way in which I agree to pay that obligation; or (B) in good faith, I argue or defend against the superior lien in a lawsuit so that, during the lawsuit, the superior lien may not be enforced and no part of the Property must be given up; or (C) I secure from the holder of that other lien an agreement, approved in writing by Lender, that the lien of this Security Instrument is superior to the lien held by that Person. If Lender determines that any part of the Property is subject to a superior lien, Lender may give to me a notice identifying the superior lien. I will pay or satisfy the superior lien or take one or more of the actions set forth above within 10 days of the giving of notice.

**5.    BORROWER'S OBLIGATION TO MAINTAIN INSURANCE**

At my sole cost and expense, I will obtain and maintain hazard insurance to cover all buildings and other improvements that now are or in the future will be located on the Property. The insurance must cover loss or damage caused by fire, hazards normally covered by "extended coverage" hazard insurance policies and other hazards for which Lender requires coverage. The insurance must be in the amounts and for the periods of time required by Lender. I may choose the insurance company but my choice is subject to Lender's approval. Lender may not refuse to approve my choice unless the refusal is reasonable. All of these insurance policies and renewals of the policies must include what is known as a **Standard Mortgagee Clause** to protect Lender. The form of all policies and renewals must be acceptable to Lender. Lender will have the right to hold the policies and renewals. If Lender requires, I will promptly give Lender all receipts of paid premiums and renewal notices that I receive.

SD001E (2004-03-3)                                                                          CA

# EXHIBIT C

0044718096

If I obtain earthquake insurance, any other hazard insurance, credit life and/or disability insurance, or any other insurance on or relating to the Property or the Secured Notes and which are not specifically required by Lender, I will name Lender as loss payee of any proceeds.

If there is a loss or damage to the Property, I will promptly notify the proper insurance company and Lender. If I do not promptly prove to the insurance company that the loss or damage occurred, then Lender may do so.

The amount paid by the insurance company is called "Proceeds." Any Proceeds received will be applied first to reimburse Lender for costs and expenses incurred in connection with obtaining the Proceeds, and then, at Lender's option and in the order and proportion as Lender may determine in its sole and absolute discretion, regardless of any impairment or lack of impairment of security, as follows: (A) to the extent allowed by applicable law, to the Sums Secured in a manner that Lender determines and/or (B) to the payment of costs and expenses of necessary repairs or to the restoration of the Property to a condition satisfactory to Lender, such application to be made in the manner and at the times as determined by Lender.

If I abandon the Property or if I do not answer, within 30 days, a notice from Lender or the insurance company stating that the insurance company has offered to settle a claim, Lender may collect the Proceeds. I will notify Lender immediately of any offer to settle a claim I receive from the insurance company. I will immediately deliver any Proceeds I receive from any insurer or other persons to Lender. Lender may use the Proceeds to repair or restore the Property or to pay the Sums Secured. The 30-day period will begin when the notice is given.

If any Proceeds are used to reduce the amount of the outstanding balance of the Sums Secured, that use will not delay the due date or change the amount of any of my regularly scheduled payments under the Secured Notes and under Paragraphs 1 and 2 above. However, Lender and I may agree in writing to delays or changes.

If Lender acquires the Property under Paragraph 28 below, all of my rights in the insurance policies will belong to Lender. Also, all of my rights in any Proceeds which are paid because of damage that occurred before the Property is acquired by Lender or sold will belong to Lender. However, Lender's rights in those Proceeds will not be greater than the total amount of the Sums Secured immediately before the Property is acquired by Lender or sold.

If I am required by Lender to pay premiums for mortgage insurance, I will pay the premiums until the requirement for mortgage insurance ends according to my written agreement with Lender or according to law.

## 6.    BORROWER'S OBLIGATION TO MAINTAIN THE PROPERTY AND TO FULFILL ANY LEASE OBLIGATIONS

I will keep the Property in good repair including, but not limited to, keeping the Property free from debris, mold, termites, dry rot and other damaging pests and infestations. I will not destroy or substantially change the Property and I will not allow the Property to deteriorate. I will keep and maintain the Property in compliance with any state or federal health and safety laws, and hazardous materials and hazardous waste laws. I will not use, generate, manufacture or store any hazardous materials or hazardous waste on, under or about the Property. I will indemnify, defend and hold harmless Lender and its employees, officers and directors and their successors from any claims, damages or costs for required or necessary repair or the removal of mold, termites, dry rot, other damaging pests and infestations and hazardous waste or any other hazardous materials claim. If I do not own but am a tenant on the Property, I will fulfill my obligations under my lease. I also agree that, if I acquire the fee title to the Property, my lease interest and the fee title will not merge unless Lender agrees to the merger in writing.

# EXHIBIT C

0044718096

**7.     LENDER'S RIGHT TO PROTECT ITS RIGHTS IN THE PROPERTY**

If: (A) I do not keep my promises and agreements made in this Security Instrument, or (B) someone, including me, begins a legal proceeding that may significantly affect Lender's rights in the Property (including but not limited to any manner of legal proceeding in bankruptcy, in probate, for condemnation or to enforce laws or regulations), then Lender may do and pay for whatever it deems reasonable or appropriate to protect the Lender's rights in the Property. Lender's actions may include, without limitation, appearing in court, paying reasonable attorneys' fees, purchasing insurance required under Paragraph 5, above (such insurance may cost more and provide less coverage than the insurance I might purchase), and entering on the Property to make repairs. Lender must give me notice before Lender may take any of these actions. Although Lender may take action under this Paragraph 7, Lender does not have to do so. Any action taken by Lender under this Paragraph 7, will not release me from my obligations under this Security Instrument.

I will pay to Lender any amounts which Lender advances under this Paragraph 7 with interest, at the interest rate in effect under the Secured Notes. I will pay those amounts to Lender when Lender sends me a notice requesting that I do so. Interest on each amount will begin to accrue on the date that the amount is advanced by Lender. However, Lender and I may agree in writing to terms that are different from those in this Paragraph 7. This Security Instrument will protect Lender in case I do not keep this promise to pay those amounts with interest.

**8.     LENDER'S RIGHT TO INSPECT THE PROPERTY**

Lender, and others authorized by Lender, may enter upon and inspect the Property. They must do so in a reasonable manner and at reasonable times. Before or at the time an inspection is made, Lender must give me notice stating a reasonable purpose for the inspection.

**9.     AGREEMENTS ABOUT GOVERNMENTAL TAKING OF THE PROPERTY**

I assign to Lender all my rights: (A) to proceeds of all awards or claims for damages resulting from condemnation, eminent domain or other governmental taking of all or any part of the Property; and (B) to proceeds from a sale of all or any part of the Property that is made to avoid condemnation, eminent domain or other governmental taking of the Property. All of those proceeds will be paid to Lender. If I receive any such proceeds, I will immediately deliver them to Lender.

If all of the Property is taken, the proceeds will be used to reduce the Sums Secured. If any of the proceeds remain after the Sums Secured have been paid in full, the remaining proceeds will be paid to me. Unless Lender and I agree otherwise in writing, if only a part of the Property is taken, Sums Secured will be reduced only by the amount of proceeds multiplied by the following fraction: (A) the total amount of the Sums Secured immediately before the taking, divided by (B) the fair market value of the Property immediately before the taking. The remainder of the proceeds will be paid to me.

If I abandon the Property or if I do not answer, within 30 days, a notice from Lender stating that a governmental authority has offered to make a payment or to settle a claim for damages, Lender has the authority to collect the proceeds and settle the claim. Lender may then use the proceeds to reduce the Sums Secured. The 30-day period will begin when the notice is given.

If any proceeds are used to reduce the amount of the outstanding principal of the Secured Notes, that use will not delay the due date or change the amount of any of my regularly scheduled payments under the Secured Notes and under Paragraphs 1 and 2 above. However, Lender and I may agree in writing to delays or changes.

# EXHIBIT C

0044718096

**10.    CONTINUATION OF BORROWER'S OBLIGATIONS AND OF LENDER'S RIGHTS**

**(A)    Borrower's Obligations**

Lender may allow a Person who takes over my rights and obligations subject to this Security Instrument to delay or to change the amount of the payments of principal and interest due under the Secured Notes or under this Security Instrument. Even if Lender does this, however, that Person and I will both still be fully obligated under the Secured Notes and under this Security Instrument.

Lender may allow those delays or changes for a Person who takes over my rights and obligations, even if Lender is requested not to do so. Lender will not be required to bring a lawsuit against such a Person for not fulfilling obligations under the Secured Notes or under this Security Instrument, even if Lender is requested to do so.

**(B)    Lender's Rights**

Even if Lender does not exercise or enforce any of its rights under this Security Instrument or under the law, Lender will still have all of those rights and may exercise and enforce them in the future. Even if Lender obtains insurance, pays taxes, or pays other claims, charges or liens against the Property, Lender will have the right under Paragraph 28 below to demand that I make immediate payment in full of the Sums Secured.

**11.    OBLIGATIONS OF BORROWER, CO-SIGNORS AND OF PERSONS TAKING OVER
          BORROWER'S RIGHTS OR OBLIGATIONS**

Except as provided below, if more than one Person signs this Security Instrument as Borrower, each of us is fully obligated to keep all of Borrower's promises and obligations contained in this Security Instrument. Lender may enforce Lender's rights under this Security Instrument against each of us individually or against all of us together. This means that any one of us may be required to pay all of the Sums Secured.

Any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signor"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signor's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signor's consent.

Any Person who takes over my rights or obligations under this Security Instrument will have all of my rights and will be obligated to keep all of my promises and agreements made in this Security Instrument. Similarly, any Person who takes over Lender's rights or obligations under this Security Instrument will have all of Lender's rights and will be obligated to keep all of Lender's agreements made in this Security Instrument.

**12.    MAXIMUM LOAN CHARGES**

If the loan secured by this Security Instrument is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the loan exceed permitted limits, then: (A) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limits and (B) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the outstanding principal balance of the Secured Notes or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge under the Secured Notes.

SD001H (2004-03-3)                                                                                                    CA

# EXHIBIT C

0044718096

13. **LEGISLATION AFFECTING LENDER'S RIGHTS**

If a change in applicable law would make any provision of the Secured Notes or this Security Instrument unenforceable, Lender may require that I make immediate payment in full of all Sums Secured by this Security Instrument.

14. **NOTICES REQUIRED UNDER THIS SECURITY INSTRUMENT**

Any notice that must be given to me under this Security Instrument will be given by delivering it or by mailing it by first class mail unless applicable law requires use of another method. The notice will be addressed to me at **28841 YOSEMITE PL, CANYON LAKE, CA 92587-7809**. A notice will be given to me at an alternative address if I give Lender notice of my alternative address. I may give notice to Lender of my alternative address in writing or by calling Lender's customer service telephone number provided on my billing statement. I may designate only one mailing address at a time for notification purposes. Except as permitted above for changes of address, any notice that must be given to Lender under this Security Instrument will be given by mailing it by first class mail to Lender's address stated in Section I.(C) above entitled, "Definitions of Words Used In This Deed of Trust," unless Lender gives me notice of a different address. Any notice required by this Security Instrument is given when it is mailed or when it is delivered according to the requirements of this Paragraph 14 or of applicable law.

15. **GOVERNING LAW; SEVERABILITY**

**This Security Instrument and the Secured Notes shall be governed by and construed under federal law and federal rules and regulations, including those for federally chartered savings institutions ("Federal Law") and, to the extent Federal Law does not apply, by the law of the jurisdiction in which the Property is located.** In the event that any of the terms or provisions of this Security Instrument or the Secured Notes are interpreted or construed by a court of competent jurisdiction to be void, invalid or unenforceable, such decision shall affect only those provisions so construed or interpreted and shall not affect the remaining provisions of this Security Instrument or the Secured Notes.

16. **BORROWER'S COPY**

I acknowledge the receipt of one conformed copy of the Secured Notes and of this Security Instrument.

17. **LENDER'S RIGHTS TO RENTAL PAYMENTS AND TO TAKE POSSESSION OF THE PROPERTY**

If Lender requires immediate payment in full or if I abandon the Property, then Lender, Persons authorized by Lender, or a receiver appointed by a court at Lender's request may: (A) collect the rental payments, including overdue rental payments, directly from the tenants; (B) enter upon and take possession of the Property; (C) manage the Property; and (D) sign, cancel and change rental agreements and leases. If Lender notifies the tenants that Lender has the right to collect rental payments directly from them under this Paragraph 17, I agree that the tenants may make those rental payments to Lender without having to ask (i) Lender whether I have failed to keep my promises and agreements under this Security Instrument, or (ii) me for my permission to do so.

If Lender acts to have the Property sold after a Breach of Duty as defined in Paragraph 28, I understand and agree that: (A) my right to occupy the Property ceases at the time the Property is sold; (B) I shall have no right to occupy the Property after such sale without the written consent of the new owner of the Property; and (C) my wrongful and unlawful possession of the Property may subject me to monetary damages, including the loss of reasonable rent and the cost of eviction. All rental payments collected by

# EXHIBIT C

0044718096

Lender or by a receiver, other than the rent paid by me under this Paragraph 17, will be used first to pay the costs of collecting rental payments and of managing the Property. If any part of the rental payments remains after those costs have been paid in full, the remaining part will be used to reduce the Sums Secured. The costs of managing the Property may include the receiver's fees, reasonable attorneys' fees and the costs of any necessary bonds.

**18.     INJURY TO PROPERTY; ASSIGNMENT OF RIGHTS**

An assignment is a transfer of rights to another. I may have rights to bring legal action against persons, other than Lender, for injury or damage to the Property or in connection with the loan made to me by Lender and which arose or will arise before or after the date of this Security Instrument. These rights to bring legal action may include but are not limited to an action for breach of contract, fraud, concealment of a material fact, or for intentional or negligent acts. I assign these rights, and any and all proceeds arising from these rights, as permitted by applicable law, to Lender. Lender may, at its option, enforce these rights in its own name and may apply any proceeds resulting from this assignment to the Sum Secured and this Security Instrument after deducting any expenses, including attorneys' fees, incurred in enforcing these rights. At the request of Lender, I will sign any further assignments or other documents that may be necessary to enforce this assignment. I will notify Lender immediately if I believe I have the right to bring any such legal action against any persons, and will notify Lender immediately if I assert any claim or demand against or commence any legal action against any such person. If I receive any proceeds from any persons besides Lender in connection with any such claim, demand or legal action, I will immediately deliver such proceeds to Lender.

**19.     CLERICAL ERRORS**

In the event Lender at any time discovers that this Security Instrument, the Secured Notes or any other document related to this loan, called collectively the "Loan Documents," contains an error which was caused by a clerical mistake, calculation error, computer error, printing error or similar error, I agree, upon notice from Lender, to execute such documentation as Lender deems necessary to correct any such error(s) and I also agree that I will not hold Lender responsible for any damage to me which may result from any such error.

**20.     LOST, STOLEN OR MUTILATED DOCUMENTS**

If any of the Loan Documents are lost, stolen, mutilated or destroyed and Lender delivers to me an indemnification in my favor, signed by Lender, then I will sign and deliver to Lender a Loan Document identical in form and content which will have the effect of the original for all purposes.

**21.     WAIVER OF STATUTE OF LIMITATIONS**

I will waive, within applicable law, the pleading of the statute of limitations as a defense to enforce this Security Instrument, including any obligations referred to in this Security Instrument or Secured Notes.

**22.     CAPTIONS**

The captions and headings at the beginning of each paragraph of this Security Instrument are for reference only and will not be used in the interpretation of any provision of this Security Instrument.

**23.     MODIFICATION**

This Security Instrument may be modified or amended only by an agreement in writing signed by Borrower and Lender.

**24.     CONDOMINIUM, COOPERATIVE AND PLANNED UNIT DEVELOPMENT OBLIGATIONS**

If the Property is a unit in a condominium, cooperative or planned unit development, each of which shall be called the "Project," and I have an interest in the common elements of the Project, then Lender and I agree that:

**(A)**     If an owners association or other entity, called "Owners Association," holds title to Property for the benefit or use of the Project and its members or shareholders, the Property also includes my interest in the Owners Association and the uses, proceeds and benefits of my interest.

SD001J (2004-03-3)                                                                                                          CA

# EXHIBIT C

0044718096

**(B)**    The following are called the "Constituent Documents:" (i) The declaration or any other document which created the Project; (ii) By-laws of the Owners Association; (iii) Code of regulations for the Project; (iv) Articles of incorporation, trust instrument or equivalent document which creates the Owners Association; (v) The Project's covenants, conditions and restrictions; (vi) Other equivalent documents.

I shall perform all of my obligations under the Constituent Documents, including my obligation to pay, when due, all dues and assessments. If I do not pay the dues and assessments when due, Lender may, at its option, pay them. I will pay to Lender any amounts which Lender advances under this Paragraph 24 according to the terms described in Paragraph 7 above.

**(C)**    If the Owners Association maintains, with an insurance company reasonably acceptable to Lender, a **master** or **blanket** policy on the Project which is satisfactory to Lender and which provides insurance coverage on the terms, in the amounts, for the periods, and against the hazards Lender requires, including fire and hazards included within the term "extended coverage," and Lender is provided with evidence of such **master** or **blanket** policy, then: (i) Lender waives the provision in Paragraph 2(B) above for the payment to Lender of the estimated yearly premium installments for hazard insurance on the Property; and (ii) hazard insurance coverage on the Property as required by Paragraph 5 above is deemed to be satisfied to the extent that the required coverage is provided by the Owners Association policy. I shall give Lender prompt notice of any lapse in the required hazard insurance coverage. I shall provide a copy of such **master** or **blanket** policy to Lender annually.

In the event of a distribution of any hazard insurance proceeds, including without limitation any earthquake or special hazards insurance whether or not such coverage was required by Lender, in lieu of restoration or repair following a loss to the Property, whether to the unit or to common elements, any proceeds payable to me are hereby assigned and shall be paid to Lender for application to the Sums Secured by this Security Instrument, with any excess paid to me. If I receive any such proceeds, I will immediately deliver them to Lender or otherwise apply them as set forth above.

I shall take such actions as may be reasonable to insure that the Owners Association maintains a public liability insurance policy acceptable to Lender in form, amount and extent of coverage.

**(D)**    I shall not, except after notice to Lender and with Lender's prior written consent, either partition or subdivide the Property or consent to: (i) the abandonment or termination of the Project, except for abandonment or termination required by law in the case of substantial destruction by fire or other casualty or in the case of condemnation, eminent domain or other governmental taking; (ii) any amendment to any provision of Constituent Documents unless the provision is for the express benefit of Lender or of lenders generally; (iii) termination of professional management and assumption of self-management of the Owners Association; or (iv) any action which would have the effect of rendering the **master** or **blanket** hazard insurance policy and/or the public liability insurance coverage maintained by the Owners Association unacceptable to Lender.

## 25.    FUTURE ADVANCES

At Borrower's request, Lender, at its option (but before release of this Security Instrument or the full reconveyance of the Property described in the Security Instrument) may lend future advances, with interest, to Borrower. Such future advances, with interest, will then be additional Sums Secured under this Security Instrument.

# EXHIBIT C

0044718096

**26.    AGREEMENTS ABOUT LENDER'S RIGHTS IF THE PROPERTY IS SOLD OR TRANSFERRED**

**Acceleration of Payment of Sums Secured.** Lender may, at its option, require immediate payment in full of all Sums Secured by this Security Instrument if all or any part of the Property, or if any right in the Property, is sold or transferred without Lender's prior written permission. Lender also may, at its option, require immediate payment in full if Borrower is not a natural Person and a beneficial interest in Borrower is sold or transferred without Lender's prior written permission. However, Lender shall not require immediate payment in full if this is prohibited by Federal Law in effect on the date of the Security Instrument.

If Lender exercises the option to require immediate payment in full, Lender will give me notice of acceleration. If I fail to pay all Sums Secured by this Security Instrument immediately, Lender may then or thereafter invoke any remedies permitted by this Security Instrument without further notice to or demand on me.

**Exception to Acceleration of Payment of Sums Secured.** If the sale or transfer of all or any part of the Property, or of a beneficial interest in Borrower, if Borrower is not a natural Person, is the first one to occur after the date of this Security Instrument, Lender will not exercise the option to accelerate payment in full of all Sums Secured and the loan may be assumed if:

(i)    Lender receives a completed written application from transferee to evaluate the creditworthiness of transferee as if a new loan were being made to the transferee by Lender;

(ii)    Lender approves the creditworthiness of the transferee in writing;

(iii)    transferee makes a cash downpayment sufficient to meet Lender's then current underwriting standards;

(iv)    an assumption fee, in an amount to be determined by Lender (but not to exceed 1% of the then outstanding balance of Principal and interest under the Secured Notes at the time of sale or transfer of the Property or of the interest in the Borrower) is paid to Lender; and

(v)    the transferee executes an assumption agreement which is satisfactory to Lender. Such assumption agreement may provide, if required by Lender, that the transferee open a deposit account with Lender or with a bank or other depository institution approved by Lender, to facilitate direct payments if direct payments are required in the Note.

The loan may be assumed under its then existing terms and conditions with one exception; the Lifetime Rate Cap may be changed. The Lifetime Rate Cap shall be changed to an interest rate which is the sum of the interest rate in effect on the date of a sale or transfer of the Property or beneficial interest in Borrower plus 5 percentage points, if that sum exceeds the Lifetime Rate Cap stated in the Secured Notes.

**27.    SUBSTITUTION OF TRUSTEE**

I agree that Lender may at any time appoint a successor trustee and that Person shall become the Trustee under this Security Instrument as if originally named as Trustee.

SD001L (2004-03-3)                                                                                            CA

# EXHIBIT C

0044718096

**28.    RIGHTS OF THE LENDER IF THERE IS A BREACH OF DUTY**

It will be called a "Breach of Duty" if (i) I do not pay the full amount of each regularly scheduled payment on the date it is due; or (ii) I fail to perform any of my promises or agreements under the Note or this Security Instrument; or (iii) any statement made in my application for this loan was materially false or misleading or if any statement in my application for this loan was materially false or misleading by reason of my omission of certain facts; or (iv) I have made any other statement to Lender in connection with this loan that is materially false or misleading. If there is a Breach of Duty by me, Lender may demand an immediate payment of all sums secured.

If there is a Breach of Duty by me, Lender may exercise the power of sale, take action to have the Property sold under applicable law, and invoke such other remedies as may be permitted under any applicable law.

Lender does not have to give me notice of a Breach of Duty. If Lender does not make a demand for full payment of the Sums Secured upon a Breach of Duty, Lender may make a demand for full payment of the Sums Secured upon any other Breach of Duty.

If there is a Breach of Duty, Lender may also take action to have a receiver appointed to collect rents from any tenants on the Property and to manage the Property. The action to appoint a receiver may be taken without prior notice to me and regardless of the value of the Property.

The sale of the Property may be postponed by or at the direction of Lender. If the Property is sold, I agree that it may be sold in one parcel. I also agree that Lender may add to the amount that I owe to Lender all legal fees, costs, allowances, and disbursements incurred as a result of the action to sell the Property.

Lender will apply the proceeds from the sale of the Property in the following order: (A) to all fees, expenses and costs incurred in connection with the sale, including but not limited to trustees' and attorneys' fees, if any; (B) to all Sums Secured by this Security Instrument; and (C) any excess to the Person or Persons legally entitled to it.

**29.    RECONVEYANCE**

Upon payment of all Sums Secured by this Security Instrument, Lender shall request Trustee to reconvey the Property and shall surrender this Security Instrument and all Secured Notes to Trustee. Trustee shall reconvey the Property without warranty to Borrower. Lender may charge Borrower a reasonable fee for reconveying the Property, but only if the fee is paid to a third party (including the Trustee) for services rendered and the charging of the fee is permitted, whether expressly or by lack of express prohibition, under applicable law. If the fee charged does not exceed any maximum fee set by applicable law, the fee is conclusively presumed to be reasonable.

**30.    STATEMENT OF OBLIGATION**

Lender may collect a fee of $60.00, or such greater maximum amount as may from time to time be allowed by law, for furnishing any statement of obligation with respect to this Security Instrument or the Secured Notes.

# EXHIBIT C

0044718096

**31.    ( X )   QUICK QUALIFYING LOAN PROGRAM**

I have qualified for this loan by making statements of fact which were relied upon by Lender to approve the loan rapidly. This loan is called a "Quick Qualifying Loan." I have stated and I confirm that: (A) I do not have any other Quick Qualifying Loans with Lender; (B) I have agreed to not further encumber the Property and do not intend to further encumber the Property for at least six months after the date of the Secured Notes and this Security Instrument; and (C) If I am purchasing the Property, all of the terms of the purchase agreement submitted to Lender are true and the entire down payment is cash from my own funds.

If any of the statements of fact that I have made are materially false or misleading, I will be in default under the Secured Notes and this Security Instrument. If I am in such default, Lender may, at its option, increase the interest rate and margin subject to the Lifetime Rate Cap stated in the Secured Notes.

**32.    ( X )   OWNER OCCUPANCY**

Lender has relied upon statements of fact which I have made to qualify for this loan. I have stated and confirm that: (A) the Property is my personal and primary residence; (B) I will occupy the Property not later than 30 days after this Security Instrument is recorded; and (C) I will use the Property as my residence for at least 12 months from the date this Security Instrument is recorded.

If any of the statements of fact that I have made are materially false or misleading, I will be in default under the Secured Notes and this Security Instrument. If I am in such default, Lender may, at its option, increase the interest rate and margin, subject to the Lifetime Rate Cap stated in the Secured Notes.

**( X )   VALUE INDICATES THAT THE PARAGRAPH APPLIES.**

**THIS SPACE INTENTIONALLY LEFT BLANK; SIGNATURE PAGE FOLLOWS.**

SD001N (2004-03-3)                                                                CA

# EXHIBIT C

0044718096

**BY SIGNING BELOW,** I accept and agree to the promises and agreements contained in this Security Instrument and in any rider(s) signed by me and recorded in proper official records.

## (PLEASE SIGN YOUR NAME EXACTLY AS IT APPEARS BELOW)

### BORROWER(S):

_____ (Seal)
ESTHER ASAFU-ADJAYE

_____ (Seal)
FRED ASAFU-ADJAYE

**ATTACH INDIVIDUAL NOTARY ACKNOWLEDGEMENT**

# EXHIBIT C

**CALIFORNIA ALL-PURPOSE ACKNOWLEDGMENT**

State of California

County of **Riverside** }ss.

On **DECEMBER 16, 2006** before me, **PATRICK J. RUNION NOTARY PUBLIC**,
      Date              Name and Title of Officer (e.g., "Jane Doe, Notary Public")

personally appeared **FRED ASAFU-ADJAYE AND ESTHER ASAFU-ADJAYE**,
                Name(s) of Signer(s)

☐ personally known to me
☑ proved to me on the basis of satisfactory evidence

to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies) and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal.

_____
Signature of Notary Public

[Notary Seal: PATRICK J. RUNION COMM. # 1421822 NOTARY PUBLIC-CALIFORNIA ORANGE COUNTY MY COMM. EXPIRES JUNE 2, 2007 SPK1]

━━━━━━━━━━━━━ *OPTIONAL* ━━━━━━━━━━━━━

*Though the information below is not required by law, it may prove valuable to persons relying on the document and could prevent fraudulent removal and reattachment of this form to another document.*

## Description of Attached Document

Title or Type of Document: _____

Document Date: _____ Number of Pages: _____

Signer(s) Other Than Named Above: _____

## Capacity(ies) Claimed by Signer

Signer's Name: _____

☐ Individual
☐ Corporate Officer — Title(s): _____
☐ Partner — ☐ Limited ☐ General
☐ Attorney-in-Fact
☐ Trustee
☐ Guardian or Conservator
☐ Other: _____

Signer Is Representing: _____

| RIGHT THUMBPRINT OF SIGNER |
|---|
| Top of thumb here |

© 1999 National Notary Association • 9350 De Soto Ave., P.O. Box 2402 • Chatsworth, CA 91313-2402 • www.nationalnotary.org    Prod. No. 5907    Reorder: Call Toll Free 1-800-876-6827

# EXHIBIT C

# GOVERNMENT CODE
## [27361-7]

I certify under the penalty of perjury that the notary acknowledgement on the document to which this statement is attached reads as follows:

Name of notary: _____ Patrick J. Runion

Date commission expires: _____ 6-2-2007

Commission #: _____ 1421822

County where bond is filed: _____ Orange

Manufacture/Vendor #: _____ SPIC1

Place of execution: _____ Orange Ca

Date: _____ 12/21/2006

Signature: _____ D. Jepp

North American Title Company

# EXHIBIT C

ORDER NO. 2087761-70

EXHIBIT "A"
(LEGAL DESCRIPTION)

PARCEL 1:

LOT 87 OF TRACT NO. 3718, IN THE CITY OF CANYON LAKE, COUNTY OF RIVERSIDE, STATE OF CALIFORNIA, AS PER MAP RECORDED IN BOOK 59 PAGES 19 TO 30, INCLUSIVE OF MAPS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY.

PARCEL 2:

AN EASEMENT TO BE USED IN COMMON WITH OTHERS OVER LETTERED LOTS "C" THROUGH "Q", INCLUSIVE OF TRACT NO. 3718, IN THE COUNTY OF ORANGE, STATE OF CALIFORNIA, AS PER MAP RECORDED IN BOOK 59 PAGES 19 TO 30 INCLUSIVE OF MAPS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY.

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is:

601 S. Figueroa St., Suite 4050, Los Angeles, CA 90017

A true and correct copy of the foregoing document entitled (*specify*): **NOTICE OF MOTION AND MOTION FOR ORDER DETERMINING VALUE OF COLLATERAL [11 U.S.C. § 506(a), FRBP 3012]** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1.  TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**:  Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*) 01/08/2018_____, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:
Nancy S Goldenberg on behalf of U.S. Trustee United States Trustee (SA) nancy.goldenberg@usdoj.gov
Valerie Smith on behalf of Interested Party Courtesy NEF
United States Trustee (SA) ustpregion16.sa.ecf@usdoj.gov
Kevin Tang on behalf of Debtor Fred Asafu-Adjaye tangkevin911@gmail.com

☐  Service information continued on attached page

**2.  SERVED BY UNITED STATES MAIL**:  On (*date*) 01/08/2018_____, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

Honorable Mark Wallace, 411 W. Fourth St., Suite 6135, Santa Ana, CA 92701-4593

☒  Service information continued on attached page

**3.  SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served):  Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*) _____, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

☐  Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| 01/08/2018 | Dao Tran | /s/ Dao Tran |
|---|---|---|
| *Date* | *Printed Name* | *Signature* |

This form is optional.  It has been approved for use by the United States Bankruptcy Court for the Central District of California

*June 2013*                        Page 8                        **F 3012-1.MOTION.VALUATION**

*(Attached page to Proof of Service-please include any additional or alternative addresses and attach additional pages if needed)*
*(Certified Mail required for service on a national bank.)*

| | | |
|---|---|---|
| *(Name of 1st Lienholder)*<br>WELLS FARGO BANK<br><br>*Agent for Service of Process (Name & Address)*<br>ATTN: CORPORATE OFFICER<br><br>101 N. Phillips Ave.<br>Sioux Falls, SD 57104 | Address from:<br>☐ Proof of claim<br>☒ Secretary of State<br>☐ FDIC website<br>☐ Other: *(Specify)* | Delivery Method:<br>☐ US mail<br>☒ Certified mail – Tracking #<br>☐ Overnight mail – Tracking #<br>　Carrier Name: |
| *(Name of 1st Lienholder)*<br><br>*Agent for Service of Process (Name & Address)* | Address from:<br>☐ Proof of claim<br>☐ Secretary of State<br>☐ FDIC website<br>☐ Other: *(Specify)* | Delivery Method:<br>☐ US mail<br>☐ Certified mail – Tracking #<br>☐ Overnight mail – Tracking #<br>　Carrier Name: |
| *(Name of 1st Lienholder)*<br><br>*Agent for Service of Process (Name & Address)* | Address from:<br>☐ Proof of claim<br>☐ Secretary of State<br>☐ FDIC website<br>☐ Other: *(Specify)* | Delivery Method:<br>☐ US mail<br>☐ Certified mail – Tracking #<br>☐ Overnight mail – Tracking #<br>　Carrier Name: |

| | | |
|---|---|---|
| *(Name of 2nd Lienholder)*<br><br>*Agent for Service of Process (Name & Address)* | Address from:<br>☐ Proof of claim<br>☐ Secretary of State<br>☐ FDIC website<br>☐ Other: *(Specify)* | Delivery Method:<br>☐ US mail<br>☐ Certified mail – Tracking #<br>☐ Overnight mail – Tracking #<br>　Carrier Name: |
| *(Name of 2nd Lienholder)*<br><br>*Agent for Service of Process (Name & Address)* | Address from:<br>☐ Proof of claim<br>☐ Secretary of State<br>☐ FDIC website<br>☐ Other: *(Specify)* | Delivery Method:<br>☐ US mail<br>☐ Certified mail – Tracking #<br>☐ Overnight mail – Tracking #<br>　Carrier Name: |
| *(Name of 2nd Lienholder)*<br><br>*Agent for Service of Process (Name & Address)* | Address from:<br>☐ Proof of claim<br>☐ Secretary of State<br>☐ FDIC website<br>☐ Other: *(Specify)* | Delivery Method:<br>☐ US mail<br>☐ Certified mail – Tracking #<br>☐ Overnight mail – Tracking #<br>　Carrier Name: |

This form is optional.  It has been approved for use by the United States Bankruptcy Court for the Central District of California

*June 2013*　　　　　　　　　　　Page 9　　　　　　　　**F 3012-1.MOTION.VALUATION**

| *(Name of 3rd Lienholder)* <br><br> *Agent for Service of Process* <br> *(Name & Address)* | Address from: <br> ☐ Proof of claim <br> ☐ Secretary of State <br> ☐ FDIC website <br> ☐ Other: *(Specify)* | Delivery Method: <br> ☐ US mail <br> ☐ Certified mail – Tracking # <br> ☐ Overnight mail – Tracking # <br> Carrier Name: |
| *(Name of 3rd Lienholder)* <br><br> *Agent for Service of Process* <br> *(Name & Address)* | Address from: <br> ☐ Proof of claim <br> ☐ Secretary of State <br> ☐ FDIC website <br> ☐ Other: *(Specify)* | Delivery Method: <br> ☐ US mail <br> ☐ Certified mail – Tracking # <br> ☐ Overnight mail – Tracking # <br> Carrier Name: |
| *(Name of 3rd Lienholder)* <br><br> *Agent for Service of Process* <br> *(Name & Address)* | Address from: <br> ☐ Proof of claim <br> ☐ Secretary of State <br> ☐ FDIC website <br> ☐ Other: *(Specify)* | Delivery Method: <br> ☐ US mail <br> ☐ Certified mail – Tracking # <br> ☐ Overnight mail – Tracking # <br> Carrier Name: |

| *Alternative/Additional Address* <br> *(Name & Address)* | Address from: <br> ☐ Proof of claim <br> ☐ Secretary of State <br> ☐ FDIC website <br> ☐ Other: *(Specify)* | Delivery Method: <br> ☐ US mail <br> ☐ Certified mail – Tracking # <br> ☐ Overnight mail – Tracking # _____ <br> Carrier Name: |
| *Alternative/Additional Address* <br> *(Name & Address)* | Address from: <br> ☐ Proof of claim <br> ☐ Secretary of State <br> ☐ FDIC website <br> ☐ Other: *(Specify)* | Delivery Method: <br> ☐ US mail <br> ☐ Certified mail – Tracking # <br> ☐ Overnight mail – Tracking # <br> Carrier Name: |

This form is optional.  It has been approved for use by the United States Bankruptcy Court for the Central District of California

*June 2013*                    Page 10                    **F 3012-1.MOTION.VALUATION**